501 S.E.2d 479

**Marvin T. BOWERS, Bessie C. Bowers, Esta M. Bell, John R. Bell, as Class Representatives for Other Unnamed Individuals, Plaintiffs Below, Appellants,**

v.

**Gretchen WURZBURG; Southland Corporation, a Corporation; Ito–Yokado Co., Ltd., a Corporation; IYG Holding Company, a Corporation; Seven–Eleven Japan Co., Ltd., a Corporation; Darrell V. McGraw, Jr., Attorney General of the State of West Virginia; John Doe # 1, Designer; John Doe # 2, Manufacturer of Pipe and Fittings; John Doe # 3, Installer of Pipe and Fittings; and John Doe # 4, Paver of Driveway, Defendants Below, Appellees.**

No. 24201.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 20, 1998.

Decided Feb. 26, 1998.

**46**

Paul G. Taylor, Martinsburg, for Appellants.

Charles F. Printz, Jr., Bowles Rice McDavid Graff & Love, Martinsburg, Laurie Plessala Duperier, Arnold & Porter, Washington, DC, for Appellees Ito–Yokado Co., Ltd., Seven–Eleven Japan Co., Ltd., and IYG Holding Company.

DAVIS, Chief Justice:

In this class action suit against foreign companies and their Texas subsidiary, the appellants, plaintiffs below, argue that the circuit court erred by failing to provide them sufficient time to conduct jurisdictional discovery before dismissing the foreign companies for lack of personal jurisdiction. Due to the complexity of the jurisdictional facts of this case, and the initial showing by the plaintiffs that there is the potential to establish personal jurisdiction over the foreign companies, we find the circuit court erred in failing to permit time for jurisdictional discovery. Consequently, we reverse the circuit court's order and remand the case.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On December 5, 1994, an explosion and fire occurred at the home of Marvin and Bessie Bowers, plaintiffs below and appellants. A subsequent investigation revealed that the explosion and fire resulted from gasoline that had seeped into the Bowerses' basement and was ignited by a sump pump. The gasoline had apparently migrated underground from a 7–Eleven convenience store situated several thousand feet from the Bowerses' home, in Shepherdstown, West Virginia. The gasoline had also seeped into the basements of other nearby homeowners, and large quantities of gasoline were found on the surface and in the subsurface of other residential property in the surrounding area. Unsafe conditions created by the presence of the gasoline required several individuals, who are also plaintiffs in this class action, to vacate their homes. The Bowerses, in particular, could not return to their home for five months following the fire. During the clean-up, remediation contractors engaged to remove the gasoline determined that approximately 10,000 gallons of gasoline had leaked from a broken pipeline between an underground gasoline storage tank and one of the gasoline pumps at the 7–Eleven convenience store.

Thereafter, this class action suit was filed, with the Bowerses named as class representatives,[1] against Gretchen Wurzburg, the owner of the land upon which the 7–Eleven Store was situated,[2] and The Southland Cor-

---

1. For ease of reference, the entire class of appellants, plaintiffs below, will be collectively referred to as the Bowerses.

2. Ms. Wurzburg leased the land and the buildings located thereon to The Southland Corporation, owner of the 7–Eleven store.

poration [hereinafter "Southland"]. Southland is a Texas corporation with its principal office in Dallas, Texas. Southland has a certificate of authority authorizing it to do business in West Virginia,[3] and is the owner and operator of the 7–Eleven store where the gasoline leak occurred.[4] Also named as defendants in this class action suit were Ito–Yokado Co., Ltd. [hereinafter "Ito"], a Japanese corporation with its principal office located in Tokyo, Japan; Seven–Eleven Japan [hereinafter "SEJ"], a Japanese corporation that is a subsidiary of Ito; and IYG Holding Company [hereinafter "IYG"], a Delaware corporation that is also a subsidiary of Ito. Ito, SEJ and IYG [collectively referred to as "the Japanese companies" or "the Japanese defendants"] all held either a direct or indirect ownership interest in Southland at the time relevant to this suit.[5]

Shortly after receiving the summons and complaint, the Japanese defendants filed a motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(5) of the West Virginia Rules of Civil Procedure alleging lack of personal jurisdiction and insufficiency of service of process.[6] The motion was accompanied by two affidavits, one from an Ito executive, and another from a Southland executive.[7] The Bowerses then filed their response and supporting memorandum opposing dismissal. In their response, the Bowerses requested, in part, that the circuit court delay final disposition of the defendants' motion to dismiss in

order to permit them reasonable time to conduct discovery on the issue of personal jurisdiction. The circuit court did not grant the Bowerses' request. Following a subsequent hearing, the circuit court entered an order, on December 5, 1996, granting dismissal due to lack of personal jurisdiction. The circuit court found:

> The Court lacks *in personam* jurisdiction over the Japanese defendants due to a lack of minimum contacts so as to comport with fair play and substantial justice. Additionally, the court finds that the Plaintiffs did not carry their burden regarding Southland as an alter ego of the Japanese defendants. *Norfolk Southern Railway Co. v. Superior Court*, 480 U.S. 102 (1987) [sic].[8] The Court finds no need to reach the issue of service of process as it has no jurisdiction over defendants.

It is from the December 5, 1996, order of the Circuit Court of Jefferson County that the Bowerses appeal.

## II.

### STANDARD OF REVIEW

■ Procedurally, this case is before this Court pursuant to the circuit court's order granting the defendant's motion to dismiss. Generally, " '[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is de novo.' Syl. pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick*,

---

3. *See* W.Va.Code § 31–1–49 (1979) (Repl.Vol. 1996).

4. Southland owns and/or operates 7–Eleven convenience stores in twenty-nine states. In 1994, Southland owned or operated 5,630 such stores, 1,981 of which included facilities for the retail sale of gasoline.

5. The Japanese companies and Southland became affiliated in 1991, when Southland was undertaking bankruptcy reorganization. As part of the reorganization, Ito and SEJ purchased 69.98% of Southland's publicly traded common stock. The purchase was made through IYG, a holding company formed by Ito and SEJ for that purpose. On December 31, 1994, IYG directly owned 64.32% of Southland's common stock. SEJ owned 49% of IYG stock and Ito owned the other 51%. Ito also owns a majority of SEJ's stock.

6. W.Va.R.Civ.P. Rules 12(b)(2) and (b)(5) provide:

> (b) *How Presented.* Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (2) lack of jurisdiction over the person, ... (5) insufficiency of service of process.

7. The motion was also accompanied by a supporting memorandum.

8. This is an incorrect citation. It is not clear whether the circuit court intended to cite *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), *Norfolk Southern Ry. Co. v. Maynard*, 190 W.Va. 113, 437 S.E.2d 277 (1993), or some other case.

*Inc.,* 194 W.Va. 770, 461 S.E.2d 516 (1995)." Syl. pt. 1, *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.,* 200 W.Va. 221, 488 S.E.2d 901 (1997).

We are also asked to consider whether the circuit court should have provided the Bowerses the opportunity to engage in discovery, limited to the issue of jurisdiction, to obtain facts and information to support their allegations that Southland is the alter-ego of the Japanese companies. By showing that Southland is the alter-ego of the Japanese companies, the Bowerses can establish that the Japanese companies have sufficient minimum contacts with the State of West Virginia to warrant this State's assertion of personal jurisdiction.

It is well established that discovery is available for the limited purpose of developing jurisdictional facts when the trial court's jurisdiction has been challenged. *See* W.Va. R.Civ.P. 26(b)(1) (permitting, in general, "discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, . . . [and related] to the claim or *defense* of any other party" (emphasis added)); W.Va.R.Civ.P. 12(b) (identifying "lack of jurisdiction over the person" as a *defense* which may be raised by motion (emphasis added)); *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 n. 13, 98 S.Ct. 2380, 2389 n. 13, 57 L.Ed.2d 253, 265 n. 13 (1978) (observing that "where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues"); *Renner v. Lanard Toys Ltd.,* 33 F.3d 277, 283 (3d Cir.1994) (recognizing that "[n]umerous cases have sustained the right of plaintiffs to conduct discovery before the district court dismisses for lack of personal jurisdiction" (citations omitted)); *Edmond v. United States Postal Serv. Gen. Counsel,* 949 F.2d 415, 425 (D.C.Cir.1991) (stating "[a]s a general matter, discovery under the Federal Rules of Civil Procedure should be freely permitted, and this is no less true when discovery is directed to personal jurisdiction"); *Filus v. Lot Polish Airlines,* 907 F.2d 1328, 1332 (2d Cir.1990) (explaining that "generally a plaintiff may be allowed limited discovery with respect to the jurisdictional issue; but until she has shown a reasonable basis for assuming jurisdiction, she is not entitled to any other discovery"); *Wyatt v. Kaplan,* 686 F.2d 276, 283 (5th Cir.1982) (noting that "[w]hen a defendant challenges personal jurisdiction, courts generally permit depositions confined to the issues raised in the motion to dismiss"); *Hansen v. Neumueller GmbH,* 163 F.R.D. 471, 473 (D.Del. 1995) (recognizing that "Fed.R.Civ.P. 26 permits liberal discovery of any facts which are relevant and not privileged" and further recognizing that "[t]his rule also applies where the plaintiff seeks discovery to establish personal jurisdiction"); *United Mine Workers of Am. Int'l Union v. Arch Mineral Corp.,* 145 F.R.D. 3 (D.D.C.1992) (holding that plaintiff was entitled to limited discovery on the question of defendant's corporate structure where jurisdiction was claimed on alternate theories of single employer or alter-ego).[9]

While discovery is available to ascertain jurisdictional facts relative to a motion to dismiss for lack of personal jurisdiction, it is not mandatory. Whether to permit discovery [10] to aid its decision of a motion to dismiss for lack of personal jurisdiction, or whether to decide such a motion based solely upon the pleadings, affidavits and other documentary evidence, is within the trial court's sound discretion. *See* 2 James Wm. Moore, *Moore's Federal Practice* § 12.31[7] (3d ed. 1997). The court's decision will not be overturned absent an abuse of discretion. *Id.* This standard was made clear in our recent decision in *State ex rel. Bell Atlantic–West Virginia, Inc. v. Ranson,* 201 W.Va. 402, 497 S.E.2d 755 (1997):

> jurisdictional discovery in the context of a motion to compel discovery from a defendant who is resisting such discovery or where, as here, reasonable time is needed for discovery. However, we recognize that some types of discovery do require court approval. *See, e.g.,* W.Va.R.Civ.P. Rules 26(b)(4)(A)(ii) and 30(a).

---

9. For a general discussion of jurisdictional discovery, see *The Use of Discovery to Obtain Jurisdictional Facts,* 59 Va. L.Rev. 533 (1973).

10. We note that typically a party is not required to obtain court approval to conduct discovery, and our resolution of this case does not create such a requirement. Most of the cases address gaining a trial court's permission to conduct

When a defendant files a motion to dismiss for lack of personal jurisdiction under *W.Va.R.Civ.P.* 12(b)(2), the circuit court *may* rule on the motion upon the pleadings, affidavits and other documentary evidence *or* the court *may* permit discovery to aid in its decision. At this stage, the party asserting jurisdiction need only make a *prima facie* showing of personal jurisdiction in order to survive the motion to dismiss. In determining whether a party has made a *prima facie* showing of personal jurisdiction, the court must view the allegations in the light most favorable to such party, drawing all inferences in favor of jurisdiction. If, however, the court conducts a pretrial evidentiary hearing on the motion, or if the personal jurisdiction issue is litigated at trial, the party asserting jurisdiction must prove jurisdiction by a preponderance of the evidence.

Syl. pt. 4, *id.* (emphasis added). Simply stated, we hold that it is within the trial court's sound discretion whether to permit discovery to aid its decision of a motion to dismiss for lack of personal jurisdiction, made pursuant to Rule 12(b)(2) of the West Virginia Rules of Civil Procedure, or whether to decide such a motion based solely upon the pleadings, affidavits and other documentary evidence. The court's decision will not be overturned absent an abuse of discretion.

### III.

### DISCUSSION

#### A.

#### *Discovery*

■ Considering the standard set forth above, we interpret the Bowerses' argument to be that the circuit court abused its discretion by determining that it lacked personal jurisdiction over the Japanese companies based upon only the pleadings and affidavits before it, rather than postponing its decision until reasonable jurisdictional discovery could be completed. We agree.

In response, the Japanese companies argue, in essence, that the circuit court did not abuse its discretion by not permitting discovery because the plaintiffs failed to make a showing of what discovery they needed and how they believed that discovery would contradict the affidavits submitted by the Japanese defendants.

While many courts have required some showing of jurisdiction before discovery would be allowed, there is no bright-line standard.[11] It is quite clear, however, that discovery will be denied when the assertion of personal jurisdiction is frivolous, the complaint failed to plead the requisite jurisdictional contact, or the plaintiff has asserted only bare allegations of jurisdictional facts in response to a 12(b)(2) motion to dismiss. *See Terracom v. Valley Nat. Bank,* 49 F.3d 555, 562 (9th Cir.1995) (noting that plaintiff "failed to demonstrate how further discovery would allow it to contradict the [defendants'] affidavits" and recognizing that "[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denial made by defendants, the Court need not permit even limited discovery" (citation omitted)); *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56 (4th Cir.1993) (finding lower court did not abuse its discretion in refusing to allow discovery where the pleadings contained no specific facts that could establish requisite contacts); *McLaughlin v. McPhail,* 707 F.2d 800, 806 (4th Cir.1983) (concluding that district court did not abuse its discretion by finding jurisdictional discovery was not warranted where plaintiff offered " 'nothing beyond his bare allegations' that the defendants had significant contacts with the [forum] state"); *Wyatt v. Kaplan,* 686 F.2d at 284 (affirming denial of discovery "where the discovery sought ·'could not have added any significant facts' " in case where discovery

---

11. We have recognized that:

"Because the West Virginia Rules of Civil Procedure are practically identical to the Federal Rules, we give substantial weight to federal cases, especially those of the United States Supreme Court, in determining the meaning and scope of our rules. *See generally Burns v.*

*Cities Serv. Co.,* 158 W.Va. 1059, 217 S.E.2d 56 (1975); *Aetna Casualty & Sur. Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963)."

*Painter v. Peavy,* 192 W.Va. 189, 192 n. 6, 451 S.E.2d 755, 761 n. 6 (1994).

sought by plaintiff would not establish personal jurisdiction, and stating "[w]hen the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted" (citations omitted)).

When assertion of personal jurisdiction is not clearly frivolous, courts have applied different standards to determine whether discovery limited to jurisdictional facts should be permitted. A case from the United States Court of Appeals for the Third Circuit indicates that, when assertion of personal jurisdiction is not frivolous, there is little burden on the plaintiff to establish jurisdiction prior to engaging in discovery for that purpose. In that case the court, relying on prior cases, held:

> In any action the plaintiff bears the burden of demonstrating contacts with the forum state sufficient to give the court in personam jurisdiction. *Where the plaintiff's claim is not clearly frivolous, the district court should ordinarily allow discovery on jurisdiction* in order to aid the plaintiff in discharging that burden.

*Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances,* 723 F.2d 357, 362 (3d Cir.1983) (citations omitted) (emphasis added).

In *Renner v. Lanard Toys Ltd.,* 33 F.3d 277 (3d Cir.1994), another Third Circuit case, the court found that a plaintiff should have been afforded a reasonable opportunity to conduct jurisdictional discovery where the record was ambiguous and incomplete with respect to personal jurisdiction. The plaintiffs in *Renner* alleged injuries that resulted from a toy that was purchased at a McCrory's store in Pennsylvania. The defendant was the Hong Kong manufacturer of the toy. The court noted that, in response to the defendant's motion to dismiss for lack of personal jurisdiction, the plaintiffs presented "little evidence that would connect [the toy manufacturer] with Pennsylvania." *Renner* at 278. The evidence submitted by the plaintiffs consisted of two affidavits stating that the defendant's toys were sold in Pennsylvania, and two "Test Report[s]" that resulted

from testing performed by a Hong Kong laboratory to determine whether the injury causing toy complied with "the 'McCrory Stores Protocol.'" *Id.* at 278–79. The reports did not clearly indicate for whom they were prepared. *Id.* The court concluded, however, "it is possible that if [the defendant toy company] was involved in having its products tested to meet the 'McCrory Stores Protocol' ... that would show that [the defendant] intentionally markets or even designs its toys for the Pennsylvania market." *Id.* at 283. The court further noted that the record was unclear whether the relationship between the defendant and McCrory's buying agent created sufficient contacts to assert jurisdiction. *Id.* Thus, the *Renner* court permitted jurisdictional discovery, when faced with an ambiguous and incomplete record, based upon the possibility that jurisdiction could be established.

In *El–Fadl v. Central Bank of Jordan,* 75 F.3d 668 (D.C.Cir.1996), the court was asked to determine whether the trial court should have permitted jurisdictional discovery in a wrongful termination case that, similar to the case *sub judice,* also involved an alter-ego theory of personal jurisdiction.[12] The court found that the plaintiff should have been afforded the opportunity to conduct jurisdictional discovery. Although the court observed that the plaintiff had not made a *prima facie* showing of sufficient contacts to warrant the trial court's assertion of jurisdiction, it concluded that "[e]ven though [the plaintiff's] present jurisdictional allegations are insufficient, he has sufficiently demonstrated that *it is possible* that he could supplement them through discovery." *Id.* at 676 (emphasis added). The evidence before the court indicated that the defendant bank had the following contacts with the forum district: (1) it issued a commercial loan of over $500,-000; (2) in litigation concerning that loan, it filed a counter-claim; (3) it entered into collateral agreements covering loans in the District of Columbia using a form contract that designated District of Columbia law as the governing law; (4) it owned 70% of the de-

---

**12.** The plaintiff alleged that he was wrongfully terminated by a subsidiary of the defendant over whom he sought jurisdiction.

fendant subsidiary; (5) millions of dollars sent by wire transfers from the subsidiary's Jordan office to its District of Columbia office went through the defendant bank; (6) the defendant had joint loans with its subsidiary and the subsidiary acted as defendant's collection agent in the District of Columbia. *Id.* at 675. The court commented further that "[a] plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum." *Id.* at 676.

The United States District Court, for the District of Delaware, has recognized that "[a]s a general rule, courts are wary of allowing discovery absent *some* showing of personal jurisdictional facts if a defendant has challenged plaintiff's assertion of personal jurisdiction over him, because the basic fact-finding should precede discovery." *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 474 (D.Del.1995). The court also observed that:

> Courts have recognized that facts which would establish personal jurisdiction over the defendant are often in the exclusive control of the defendant.... As such, a plaintiff may be unable, without some discovery, to properly respond to a motion to dismiss pursuant to 12(b)(2), and a court will therefore allow some discovery.... On the other hand, a court cannot permit discovery as a matter of course simply because a plaintiff has named a particular party as a defendant. The court must be satisfied that there is some indication that this particular defendant is amenable to suit in this forum.

*Id.* at 475 (citations omitted). The United States District Court for the Middle District of North Carolina has also addressed this issue. In *Rich v. KIS Cal., Inc.*, the district court commented that:

> When plaintiff can show that discovery is necessary in order to meet defendant's challenge to personal jurisdiction, a court should ordinarily permit discovery on that issue unless plaintiff's claim appears to be clearly frivolous.... However, where a

plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition.

121 F.R.D. 254, 259 (M.D.N.C.1988) (citations omitted). The plaintiffs in *Rich* sought discovery from two defendants, an individual and a foreign corporation. In an opinion that did not state the factual circumstances surrounding the case, the court concluded that discovery was not warranted against the individual defendant because "[n]either in the complaint nor otherwise have plaintiffs identified any basis for concluding that the Court has personal jurisdiction over [the individual defendant]." *Id.* However, with respect to the foreign corporation, the court found that discovery should be allowed. The court determined that a sufficient showing of jurisdiction had been made through the plaintiffs' allegations that the foreign corporation had manufactured certain equipment that plaintiffs purchased from a wholly owned subsidiary of the foreign corporation.

 From our review of the above cases, we hold that a plaintiff asserting personal jurisdiction over a nonresident defendant must establish that his or her claim is not frivolous. To do so, the plaintiff must allege the requisite jurisdictional contact in his or her complaint and must assert more than bare allegations of jurisdictional facts in response to a motion to dismiss under Rule 12(b)(2) of the West Virginia Rules of Civil Procedure. Once these threshold criteria have been met, the court generally should permit limited jurisdictional discovery, unless the court's jurisdiction, or lack thereof, is clear.

We find further support for this view in the fact that Rule 26(b) of the West Virginia Rules of Civil Procedure, pertaining to the scope and limits of discovery, is broad in scope and should be liberally applied to permit discovery, absent some restriction imposed by the rules.[13] 8 Charles Alan Wright,

---

**13.** *See, e.g.,* W.Va.R.Civ.P. Rule 26(c) (providing for protective orders under certain circum- stances).

et al., *Federal Practice and Procedure* § 2007 (civil 2d 1994). Indeed, the United States Supreme Court has stated generally: "the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case." *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451, 460 (1947). The United States Court of Appeals for the First Circuit expressed the same view, in the context of jurisdictional discovery, when it stated:

> "A plaintiff who is a total stranger to a corporation should not be required, unless he has been undiligent, to try such an issue on affidavits without the benefit of full discovery. If the court did not choose to hear witnesses, this may well have been within its province, but in such event plaintiff was certainly entitled to file such further interrogatories as were reasonably necessary and, if he wished, to take depositions. The condemnation of plaintiff's proposed further activities as a 'fishing expedition' was unwarranted. When the fish is identified, and the question is whether it is in the pond, we know no reason to deny a plaintiff the customary license."

*Compagnie des Bauxites de Guinee*, 723 F.2d at 362 (quoting *Surpitski v. Hughes–Keenan Corp.*, 362 F.2d 254, 255–56 (1st Cir.1966)).

Moreover, we find the need for jurisdictional discovery particularly compelling when the theory under which jurisdiction is sought is complex. *See* 6 James Wm. Moore, *Moore's Federal Practice* § 26.41[6] (3d ed. 1997) ("The district court may deny discovery and dismiss the complaint when it is clear that discovery regarding jurisdictional issues seems pointless, as when the complaint itself offers no basis for jurisdiction. However, when the facts surrounding jurisdiction are complex, it may be an abuse of a trial court's discretion to dismiss the case

before the plaintiff has an opportunity for discovery." (Citing *Majd–Pour v. Georgiana Community Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir.1984))).

Finally, we note that "[w]hen a nonresident defendant files a Rule 12(b)(2) motion, ... and offers 'affidavits or depositions, ... the party resisting such motion may not stand on its pleadings [but] must come forward with affidavits or other proper evidence detailing specific facts demonstrating that the court has jurisdiction over the defendant.'" *State ex rel. Bell Atlantic–West Virginia, Inc. v. Ranson*, 201 W.Va. at 415, 497 S.E.2d at 768 (citations omitted). We believe that it is inequitable to require a plaintiff to come forward with "proper evidence detailing specific facts demonstrating" personal jurisdiction, yet deny him or her access to reasonable jurisdictional discovery through which such evidence may be obtained, particularly in a complex case such as this one.

In this case, the plaintiffs assert a complex theory of personal jurisdiction that requires details of the relationship between a foreign parent company and its domestic subsidiary.[14] This is information that is likely in the exclusive control of the defendant Japanese companies. In addition, we note that the Bowerses adequately pleaded the alter-ego theory of jurisdiction in their complaint, and have asserted the following factual allegations regarding the Japanese defendants' relationship with Southland: (1) the Japanese defendants either directly or indirectly possess the majority ownership interest in Southland; (2) six of the members of Southland's board of directors also serve on the boards of one or more of the Japanese defendants; (3) Ito guaranteed a four-hundred-million-dollar loan for Southland; and (4) Southland has apparently adopted Ito's inventory control methods. We also note that the record indicates that a large majority of Southland's board of directors were appointed by Ito.[15] Without expressing an opinion

---

**14.** As previously mentioned, Southland has a certificate of authority authorizing it to do business in West Virginia. Moreover, there has been no challenge to the circuit court's exercise of jurisdiction over Southland.

**15.** A shareholders agreement entered into following Ito's purchase of a majority ownership interest in Southland provided that Ito would appoint ten of the fourteen directors on Southland's board.

as to whether this evidence establishes that the circuit court has personal jurisdiction over the Japanese defendants, we believe that it is clearly sufficient to establish that the Bowerses' assertion of jurisdiction is not frivolous. Thus, we find that the circuit court abused its discretion by failing to provide the Bowerses an opportunity to conduct jurisdictional discovery.

We note, however, that on remand, jurisdictional discovery must be conducted in accordance with the West Virginia Rules of Civil Procedure as they pertain to discovery.[16] Once reasonable discovery has been completed, the circuit court may, in the exercise of its discretion, conduct a pretrial evidentiary hearing on the Japanese defendants' motion to dismiss, in which case the Bowerses must establish personal jurisdiction over *each defendant* [17] by a preponderance of the evidence. Syl. pt. 4, *State ex rel. Bell Atlantic–West Virginia, Inc.* If the circuit court makes its decision without an evidentiary hearing, the Bowerses must make a *prima facie* showing of personal jurisdiction over *each defendant,* and "the court must view the allegations in·the light most favorable to [the Bowerses], drawing all inferences in favor of jurisdiction." *Id.* at 415, 497 S.E.2d at 768 (citations omitted). If the Bowerses successfully make a *prima facie* showing of personal jurisdiction, thereby convincing the court to deny the defendants' motion to dismiss, they must nevertheless establish personal jurisdiction by a preponderance of the evidence either at a full evidentiary hearing or at trial. *Id.* at 417 n. 9, 497 S.E.2d at 770 n. 9.

### B.

#### Personal Jurisdiction

The Bowerses next contend that the circuit court erred by concluding that it did not have jurisdiction over the Japanese companies.[18] Because we find that the court erred by

---

**16.** *See* W.Va.R.Civ.P. Rules 26 through 37.

**17.** *See Clark v. Milam,* 830 F.Supp. 316, 319 (S.D.W.Va.1993) (stating "the Court must ... decide whether Plaintiff has met its burden of establishing ... personal jurisdiction with respect to each Defendant" (citations omitted)).

failing to provide the Bowerses with a reasonable opportunity to conduct discovery, we need not consider whether the court's previous determination of jurisdiction was in error. However, since the circuit court must · revisit this issue, we will provide some guidance.

 With respect to a circuit court's determination of whether it can appropriately exercise personal jurisdiction over a foreign corporation, we have held:

> A court must use a two-step approach when analyzing whether personal jurisdiction exists over a foreign corporation or other nonresident. The first step involves determining whether the defendant's actions satisfy our personal jurisdiction statutes set forth in *W.Va.Code,* 31-1-15 [1997] and *W.Va.Code,* 56-3-33 [1997]. The second step involves determining whether the defendant's contacts with the forum state satisfy federal due process.

Syl. pt. 5, *Abbott v. Owens–Corning Fiberglas Corp.,* 191 W.Va. 198, 444 S.E.2d 285 (1994). In the case *sub judice,* it is not disputed that the circuit court has jurisdiction over Southland, a foreign corporation doing business in West Virginia. However, the Bowerses attempt to also assert personal jurisdiction over Southland's parent companies, by claiming that Southland is merely the alter-ego of those parent companies. In this context, although the first part of the *Abbott* two-prong test has been satisfied as to Southland, the court must also apply the *Abbott* analysis to Southland's parent corporations. Thus, the court must determine whether it is appropriate, under West Virginia law, to exercise jurisdiction over the parent corporations. On the issue of whether a circuit court has jurisdiction over the parent corporation of a subsidiary doing business in this state, we have held:

---

**18.** In addition, the Bowerses urge us to adopt the *Multinational Enterprise Parent Liability* doctrine utilized by Indian courts with respect to the devastating chemical leak that occurred in Bhopal, India. We are unpersuaded by their meager argument on this point and decline to adopt the doctrine. The Bowerses also assigned various other errors. We find these errors were inadequately briefed and decline to address them.

A parent-subsidiary relationship between corporations, one of which is "doing business" in West Virginia, does not without the showing of additional factors subject the nonresident corporation to this state's jurisdiction. However, *if the parent and its subsidiary operate as one entity, their formal separate corporate structures will not prevent the assertion of jurisdiction over the non-resident corporation.* The extent of control exercised by the non-resident corporation over the corporation doing business in this state determines whether the non-resident corporation is subject to this state's jurisdiction.

Syl. pt. 2, *Norfolk Southern Ry. Co. v. Maynard,* 190 W.Va. 113, 437 S.E.2d 277 (1993) (emphasis added). The *Norfolk Southern* Court explained that "the determination of when a foreign parent corporation, whose subsidiary is present in this state, is subject to the jurisdiction of this state's courts must be made on a case by case basis." *Id.* at 118, 437 S.E.2d at 282. The Court also suggested eleven factors which may be helpful in determining whether to pierce the corporate veil. *Id.* We hold that the following factors must be considered by a circuit court, in addition to any other factors relevant to a particular case, in determining whether to assert personal jurisdiction over the parent company of a subsidiary doing business in West Virginia:

"(1) Whether the parent corporation owns all or most of the capital stock of the subsidiary;

"(2) Whether the parent and subsidiary corporations have common directors and officers;

"(3) Whether the parent corporation finances the subsidiary;

"(4) Whether the parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation;

"(5) Whether the subsidiary has grossly inadequate capital;

"(6) Whether the parent corporation pays the salaries and other expenses or losses of the subsidiary;

"(7) Whether the subsidiary has substantially no business except with the par-

ent corporation or no assets except those conveyed to it by the parent corporation;

"(8) Whether in the papers of the parent corporation or in the statement of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own;

"(9) Whether the parent corporation uses the property of the subsidiary as its own;

"(10) Whether the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest; and

"(11) Whether the formal legal requirements of the subsidiary are not observed. [Citation omitted.]"

*Id.* (quoting *Bielicki v. Empire Stevedoring Co., Ltd.,* 741 F.Supp. 758, 761–62 (D.Minn. 1990)). We caution that this is not an exhaustive list. Each case must be determined on its own unique facts. If, after considering these and other relevant factors, a circuit court concludes that it may properly assert personal jurisdiction over the parent company, it must then apply the second prong of the *Abbott* test and determine whether such corporation's contacts with West Virginia satisfy federal due process. Syl. pt. 5, *Abbott.*

## IV.

## CONCLUSION

For the foregoing reasons, we find that the circuit court abused its discretion by not affording the Bowerses a reasonable opportunity to conduct jurisdictional discovery, and, thus, erred in granting the Japanese defendants' motion to dismiss. Consequently, we reverse the December 5, 1996, order of the Circuit Court of Jefferson County and remand this case for further proceedings consistent with this opinion.

Reversed and remanded.