# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**A2C2 Partnership, LLC,**
**Plaintiff Below, Petitioner**

**FILED**

October 16, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 14-0960** (Kanawha County 12-C-2572)

**Constellation Software Inc.,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioner A2C2 Partnership, LLC, by counsel Michael D. Weikle, appeals the order of the Circuit Court of Kanawha County, entered on August 19, 2014, granting respondent's motion to dismiss petitioner's complaint for lack of jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. Respondent Constellation Software Inc., by counsel Carol P. Smith, filed a response. Petitioner filed a reply, to which respondent, with permission of this Court, filed a sur-reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner is a West Virginia limited liability company that is authorized to hold and lease property in the State of Michigan. Respondent is a Canadian corporation, with its principal place of business in Ontario, Canada. Respondent is a holding company, which owns the stock of its corporate subsidiaries, one of which is Gary Jonas Computing, Ltd. ("Jonas"), located in Richmond Hills, Ontario, Canada.[1]

This litigation arises from software and web hosting contracts between Jonas and the Ann Arbor Country Club, located in Ann Arbor, Michigan, executed in 2001 and 2005, respectively. Ann Arbor Country Club was placed in receivership in 2010, and petitioner acquired its assets in February of 2011. Petitioner stopped paying Jonas for its services, causing Jonas to terminate all

---

[1] Respondent argues, and the circuit court found, that respondent has no business presence in West Virginia. Petitioner admits that respondent does not have sufficient minimum contacts with West Virginia to permit the circuit court to exercise jurisdiction over it; rather, according to its amended complaint, petitioner contends that the court should invoke the "alter-ego" doctrine in order to hold respondent liable for Jonas's actions.

1

services to the golf club in November of 2011. Thereafter, petitioner paid Jonas $1,397 for what it alleged was an "unconditional promise" by Jonas to restore website hosting and maintenance services until March of 2012. After restoring services for a short period, Jonas terminated services for good in January 2012. As a result, petitioner filed the present lawsuit against respondent.

Petitioner filed its initial complaint on or around December 28, 2012, alleging eight causes of action solely against respondent. Specifically, petitioner alleged breach of contract, fraud in the inducement, fraud, intentional interference with business relations, intentional interference with prospective business relations, loss of use, and sought both compensatory and punitive damages. The complaint does not allege that there was any direct dealing and/or contract between petitioner and respondent. Respondent filed a motion to dismiss the complaint on February 1, 2013.

In response to the motion to dismiss, petitioner filed an amended complaint on May 1, 2013, making the same allegations as in its original complaint, but adding Jonas as a defendant and invoking an "alter-ego" theory of liability against respondent. Petitioner's allegations supporting its alter-ego theory included the following: (1) respondent manages its subsidiaries, including Jonas, as a single venture controlled by a single board of directors; (2) respondent states on its website that it is a leading provider of software and that acquires, manages, and builds industry-specific software businesses; (3) Jonas has been managed by respondent since 2003 and states on its website that it is a "division" of respondent; and (4) in addition to the pledge of their assets to respondent, respondent's subsidiaries guaranteed payment of respondent's $300 million line of credit.[2]

In its motion to dismiss, respondent argued lack of personal jurisdiction; improper venue because respondent does not reside in West Virginia and no part of the conduct about which petitioner complains occurred in West Virginia; and failure to state a claim upon which relief can be granted because petitioner had no contract with respondent, and respondent owed no duty to petitioner. Following briefing and a hearing, the circuit court granted respondent's motion to dismiss on all three grounds by order entered on August 19, 2014. Petitioner now appeals to this Court.

"Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc*., 194 W.Va. 770, 461 S.E.2d 516 (1995). "A complaint should not be dismissed unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief.' Syl. pt. 3, in part, *Chapman v. Kane Transfer Co., Inc.,* 160 W.Va. 530, 236 S.E.2d 207 (1977), *citing Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957*).*" *Conrad v. ARA Szabo*, 198 W.Va. 362, 370, 480 S.E.2d 801, 809 (1996).

---

[2] Petitioner failed to serve Jonas with the amended complaint, resulting in dismissal of the amended complaint as to the allegations against Jonas pursuant to Rule 4 of the West Virginia Rules of Civil Procedure. Petitioner has not appealed that ruling.

With respect to a nonresident defendant's motion to dismiss for lack of personal jurisdiction, we have held that

> "[w]hen a defendant files a motion to dismiss for lack of personal jurisdiction under *W.Va.R.Civ.P.* 12(b)(2), the circuit court may rule on the motion upon the pleadings, affidavits and other documentary evidence or the court may permit discovery to aid in its decision. At this stage, the party asserting jurisdiction need only make a *prima facie* showing of personal jurisdiction in order to survive the motion to dismiss. In determining whether a party has made a *prima facie* showing of personal jurisdiction, the court must view the allegations in the light most favorable to such party, drawing all inferences in favor of jurisdiction. If, however, the court conducts a pretrial evidentiary hearing on the motion, or if the personal jurisdiction issue is litigated at trial, the party asserting jurisdiction must prove jurisdiction by a preponderance of the evidence." Syllabus point 4, *State ex rel. Bell Atlantic–West Virginia, Inc. v. Ranson,* 201 W.Va. 402, 497 S.E.2d 755 (1997).

Syl. Pt. 2, *Bowers v. Wurzburg*, 202 W.Va. 43, 501 S.E.2d 479 (1998). Additionally, "a trial court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." Franklin D. Cleckley, Robin J. Davis, & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 12(b)(6)[2], at 386 (4th ed. 2014) (footnote omitted).

On appeal, petitioner raises a single assignment of error: that the circuit court erred in finding that petitioner failed to allege sufficient facts to warrant piercing the corporate veil of Jonas, respondent's wholly-owned subsidiary, and granting respondent's Rule 12(b)(6) motion to dismiss. Petitioner challenges the circuit court's application of the nineteen factors set forth in *Laya v. Erin Homes, Inc.,* 177 W.Va. 343, 352 S.E.2d 93 (1986), that this Court has long held are to be considered in determining whether the corporate veil should be pierced.[3] Petitioner

---

[3] These nineteen factors are as follows:

(1) commingling of funds and other assets of the corporation with those of the individual shareholders; (2) diversion of the corporation's funds or assets to noncorporate uses (to the personal uses of the corporation's shareholders); (3) failure to maintain the corporate formalities necessary for the issuance of or subscription to the corporation's stock, such as formal approval of the stock issue by the board of directors; (4) an individual shareholder representing to persons outside the corporation that he or she is personally liable for the debts or other obligations of the corporation; (5) failure to maintain corporate minutes or adequate corporate records; (6) identical equitable ownership in two entities; (7) identity of the directors and officers of two entities who are responsible for supervision and management (a partnership or sole proprietorship and a corporation owned and managed by the same parties); (8) failure to adequately capitalize a corporation for the reasonable risks of the corporate undertaking; (9) absence of separately held corporate assets; (10) use of a corporation as a mere

(continued . . .)

contends that the circuit court should have focused more heavily on the "totality of circumstances" test set forth in *Bowers, supra,* and concluded that petitioner alleged sufficient facts to invoke the alter-ego doctrine to hold respondent subject to jurisdiction in West Virginia as an alter-ego of Jonas.[4] Importantly, however, the threshold premise behind the *Bowers* factors

---

shell or conduit to operate a single venture or some particular aspect of the business of an individual or another corporation; (11) sole ownership of all the stock by one individual or members of a single family; (12) use of the same office or business location by the corporation and its individual shareholder(s); (13) employment of the same employees or attorney by the corporation and its shareholder(s); (14) concealment or misrepresentation of the identity of the ownership, management or financial interests in the corporation, and concealment of personal business activities of the shareholders (sole shareholders do not reveal the association with a corporation, which makes loans to them without adequate security); (15) disregard of legal formalities and failure to maintain proper arm's length relationships among related entities; (16) use of a corporate entity as a conduit to procure labor, services or merchandise for another person or entity; (17) diversion of corporate assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors, or the manipulation of assets and liabilities between entities to concentrate the assets in one and the liabilities in another; (18) contracting by the corporation with another person with the intent to avoid the risk of nonperformance by use of the corporate entity; or the use of a corporation as a subterfuge for illegal transactions; (19) the formation and use of the corporation to assume the existing liabilities of another person or entity.

*Laya*, 177 W.Va. at 347-48, 352 S.E.2d at 98-99.

[4] In syllabus point six of *Bowers,* this Court held as follows:

The following factors must be considered by a circuit court, in addition to any other factors relevant to a particular case, in determining whether to assert personal jurisdiction over the parent company of a subsidiary doing business in West Virginia: (1) Whether the parent corporation owns all or most of the capital stock of the subsidiary; (2) Whether the parent and subsidiary corporations have common directors and officers; (3) Whether the parent corporation finances the subsidiary; (4) Whether the parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation; (5) Whether the subsidiary has grossly inadequate capital; (6) Whether the parent corporation pays the salaries and other expenses or losses of the subsidiary; (7) Whether the subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation; (8) Whether in the papers of the parent corporation or in the statement of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own; (9) Whether the parent corporation uses the property of the subsidiary as its own; (10) Whether
(continued . . .)

4

is that the subsidiary in question was doing business in West Virginia. Such is not the case here. As respondent correctly argues, all of petitioner's dealings with Jonas with respect to the contracts giving rise to this litigation occurred in Michigan.

Upon our review, based on the facts and circumstances of this case, we decline to disturb the circuit court's ruling that petitioner failed to establish personal jurisdiction over respondent. Petitioner's argument provides an insufficient basis upon which this Court can disregard the well-established presumption that distinct corporate entities are separate as a matter of law. *See Southern Electrical Supply Co. v. Raleigh County Nat'l Bank,* 173 W.Va. 780, 788, 320 S.E.2d 515, 523 (1984). "[C]ommon ownership or common management without evidence of fraudulent contact, *total* control, or a 'dummy' corporation [does not] justify piercing a corporate veil." *Id.,* 173 W.Va. at 789, 320 S.E.2d at 524. Additionally, "[n]othing in [West Virginia's] law prohibits one man or group from . . . owning two separate corporations with common purposes." *Id.,* 173 W.Va. at 788-90, 320 S.E.2d at 524.

Petitioner's evidence at the June 9, 2014, hearing in support of its argument that West Virginia has personal jurisdiction over respondent consisted of one-hundred and one pages of respondent's required, readily available public filings downloaded from the internet. In order to establish personal jurisdiction over respondent, petitioner relied almost exclusively on the allegation that respondent pledged one-hundred percent of Jonas' assets and the assets of its other wholly-owned subsidiaries to secure a three million dollar line of credit. Petitioner called no witnesses at the hearing, and did not seek, nor does it now seek, to engage in discovery on the issue of jurisdiction.

As the circuit court ruled in the present case, the fact that Jonas is a division of, and wholly owned by, respondent does not, in and of itself, make Jonas the alter ego of respondent. Likewise, the fact that respondent makes acquisition financing available to its subsidiaries does not establish total control rising to the level of alter ego status with respect to Jonas. Finally, the existence of uniform corporate policies established and approved by a parent corporation's board of directors and applicable to its subsidiaries, like those put forth in respondent's public filings, "are hallmarks of an ordinary parent-subsidiary relationship and, without more, can not justify piercing the corporate veil or establishing personal jurisdiction over a parent corporation." *Byard v. Verizon West Virginia, Inc.,* 2012 WL 1085775, at *12 (N.D.W.Va. Mar. 30, 2012). In this case, petitioner bore the burden of proving establishing facts sufficient to disregard the corporate form by invoking the alter ego doctrine. Petitioner failed to meet that burden.[5]

---

the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest; and (11) Whether the formal legal requirements of the subsidiary are not observed.

202 W.Va. at 45-46, 501 S.E.2d at 481-82.

[5] The circuit court also granted respondent's motion to dismiss on the bases that venue was improper and that petitioner failed to state a claim upon which relief can be granted. (continued . . .)

5

For the foregoing reasons, we affirm the August 19, 2014, order of the Circuit Court of Kanawha County dismissing petitioner's civil action.

Affirmed.

**ISSUED:** October 16, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Justice Robin Jean Davis

---

Because we affirm the circuit court's order with respect to the lack of personal jurisdiction over respondent, we need not address these other two bases for the circuit court's ruling.

6