No. 20-0296 – *State ex rel. Third-Party Defendant Health Plans, et. al. v. The Honorable Shawn D. Nines, et al.*

and

No. 20-0297 – *State ex rel. Blue Cross & Blue Shield of Kansas, Inc. v. The Honorable Shawn D. Nines*

**FILED**
**November 25, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Hutchison, Justice, dissenting:**

I respectfully dissent from the majority's opinion. I believe that sufficient allegations were asserted that the foreign third-party-defendant "Blues" had a contractual arrangement with Highmark of West Virginia ("Highmark"), such that Highmark was acting as the agent of the Blues in West Virginia. The complaint also sufficiently alleged that the Blues were conspiring with Highmark in West Virginia in a manner that caused harm to MedTest in West Virginia. Given that the majority opinion was focused on the lack of evidence regarding whether the Blues purposely availed themselves of West Virginia's jurisdiction through Highmark, they should have sent the case back to the circuit court and allowed the parties to conduct jurisdictional discovery.

The majority opinion is written to produce the impression that this is little more than a West Virginia lawsuit between two West Virginia companies over a contract executed and later breached in West Virginia. That is, Highmark and MedTest entered into a contract, and MedTest breached the contract by overcharging Highmark to the tune of $6.4 million. Highmark is just suing to collect the overcharge.

What the majority opinion does not address is the motivation: *why* was Highmark suing for the overcharge? The majority opinion paints Highmark as an

1

independent firm; in reality, Highmark is interconnected nationally with the other Blues by way of the BlueCard program. The record shows that Highmark received a notification *from the Blues* that MedTest was charging too much, and it was action *from the Blues* and their interconnected BlueCard computer system that compelled Highmark to stop paying MedTest. Using the BlueCard system, Highmark claims it calculated that MedTest had billed *the Blues* – through Highmark – allegedly excessive amounts. So, the records before this Court show that when Highmark sued, it was only asking for $3,192 for itself; as for the remaining $6.3 plus million, Highmark was acting as a collection agent for *the Blues*.

As the majority opinion relates, this case is about specific jurisdiction which requires weighing three prongs (purposeful availment, arise or relate, and fairness) to see if "minimum contacts" exist. It tests whether "maintenance of the suit [would] offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Specific jurisdiction focuses on "the relationship among the defendant, the forum, and the litigation." *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014).

1. *Purposeful availment*: The defendant must "purposefully avail[] itself of the privilege of conducting activities within the forum State," such that the defendant has "clear notice that it is subject to suit there." *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980). This is the primary issue challenged by the Blues. The purposeful availment element considers how defendants have structured their affairs and where they reasonably anticipate being sued. "The purposeful availment requirement of specific

personal jurisdiction ensures that a defendant will not be haled into a jurisdiction as a result of isolated, fortuitous, or random acts." Syl. pt. 9, *State ex rel. Ford Motor Co. v. McGraw*, 237 W. Va. 573, 788 S.E.2d 319 (2016).

2. *Arise or Relate*: The controversy must "arise out of or relate to" defendant's activities in the forum; there must be "an affiliation between the forum and the underlying controversy[.]" *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1780 (2017).

3. *Fairness*: The exercise of jurisdiction must be "reasonable" and comport with "fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 113 (1987).

The central question in this case is the first element, purposeful availment. I believe it was established in MedTest's complaint.

First, this record establishes the Blues purposely conducted activities in West Virginia under the "agency theory of jurisdiction." Under this theory, the acts of an agent acting within the scope of its agency, and the resulting contacts therefrom, are imputable to the principal for determining specific personal jurisdiction of the principal. In effect, the principal may purposefully avail itself of a foreign forum through its agent's actions. The United States Supreme Court acknowledged that an agency relationship may create sufficient in-state jurisdictional contacts:

Agency relationships, we have recognized, may be relevant to the existence of specific jurisdiction. "[T]he corporate personality," *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), observed, "is a fiction, although a fiction intended to be acted upon as though it were a fact." *Id.*, at 316. *See generally* 1 W. Fletcher, Cyclopedia of the Law of Corporations § 30, p. 30 (Supp. 2012–2013) ("A corporation is a distinct legal entity that can act only through its agents."). As such, a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there. *See*, *e.g.*, *Asahi*, 480 U.S. at 112 (opinion of O'Connor, J.) (defendant's act of "marketing [a] product through a distributor who has agreed to serve as the sales agent in the forum State" may amount to purposeful availment); *International Shoe*, 326 U.S., at 318, 66 S.Ct. 154 ("the commission of some single or occasional acts of the corporate agent in a state" may sometimes "be deemed sufficient to render the corporation liable to suit" on related claims). See also Brief for Petitioner 24 (acknowledging that "an agency relationship may be sufficient in some circumstances to give rise to specific jurisdiction"). . . .

*Daimler AG v. Bauman*, 571 U.S. at 135 n.13.

The agency theory of jurisdiction is simply stated: "For purposes of personal jurisdiction, the actions of an agent may be attributed to the principal." *Daynard v. Ness, Motley*, 290 F.3d 42, 55-56 (1st Cir. 2002). Numerous federal courts have adopted this theory. *See*, *e.g.*, *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) ("For purposes of personal jurisdiction, the actions of an agent are attributable to the principal."); *E.I. duPont de Nemours & Co. v. Rhodia Fiber*, 197 F.R.D. 112, 122 (D. Del. 2000) ("Delaware law allows a court to find jurisdiction over a parent corporation for the acts of its subsidiary through either an alter ego theory or the agency theory."); *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1433 (8th Cir. 1995) (attributing contacts where

4

the principal "supported, accepted, and followed through on the efforts initiated" by the agent, regardless of whether the agent had authority to act on the principal's behalf; "Although contacts for personal jurisdiction are different from a principal's liability for an agent's unauthorized conduct, the same analysis is applicable."); *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1993) ("Activities of a party's agent may count toward the minimum contacts necessary to support jurisdiction.").

In the instant case, the Blues entered into an associational contract with Highmark, such that Highmark acted as the agent for the Blues in West Virginia. Highmark routinely processes claims from providers, reviews them, audits them, and pays them on behalf of the Blues. When a provider like MedTest is accused of overbilling the Blues, or of fraudulently billing the Blues, Highmark is responsible for pursuing those billing claims. You might even say that Highmark was acting as a collection agent for the Blues in West Virginia. Because the Blues have directed Highmark to act as its agent in West Virginia, and/or supported and accepted Highmark's actions in West Virginia on behalf of the Blues, the Blues may fairly be haled before a West Virginia court for those acts. For purposes of personal jurisdiction, the actions of Highmark may be attributed to the Blues, and a court may find that the Blues purposely availed themselves of the benefits of West Virginia's jurisdiction.

The second concept that supports personal jurisdiction in West Virginia is the "conspiracy theory of jurisdiction." This concept is nowhere near as nefarious as it sounds. Conspiracy-based jurisdiction is simply a variation on the agency theory.

5

[A]gency concepts have been used to enlarge long-arm jurisdiction. If a non-resident defendant has directed another person to act for his benefit and under his control in the forum state, the other party's act may supply the minimum contact needed to support jurisdiction over the non-resident in an action arising out of the act. . . .

As a matter of substantive law, a conspirator who performs an act in furtherance of the conspiracy does so as an agent for his co-conspirators.

At a minimum, most courts require a plaintiff to allege facts which, if proven, show: 1) that a conspiracy existed; 2) that the defendant over whom jurisdiction is sought became a member of the conspiracy; and 3) that a co-conspirator committed an act—or a "substantial act"—in furtherance of the conspiracy in the forum state.

Ann Althouse, *The Use of Conspiracy Theory to Establish in Personam Jurisdiction: A Due Process Analysis*, 52 Fordham L. Rev. 234, 234-35, 243 (1983). One federal court, acknowledging the theory had been adopted in Delaware, described it thusly:

The conspiracy theory subjects a conspirator who is absent from the forum to the jurisdiction of the court if five requirements are met. Specifically, the plaintiff must make a factual showing that:

(1) a conspiracy to defraud existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.

*G & G LLC v. White*, 535 F. Supp. 2d 452, 464 (D. Del. 2008). *See also Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 87 (2d Cir. 2018) (Under the "conspiracy theory of jurisdiction: the plaintiff must allege that (1) a conspiracy existed; (2) the defendant

6

participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state. To allow jurisdiction absent a showing that a co-conspirator's minimum contacts were in furtherance of the conspiracy would be inconsistent with the 'purposeful availment' requirement."); *In re Blue Cross Blue Shield Antitrust Litig.*, 225 F. Supp. 3d 1269, 1302 (N.D. Ala. 2016) ("Under a conspiracy theory, a defendant who otherwise may not be subject to personal jurisdiction might be hailed into court if the plaintiff 'plead[s] with particularity the conspiracy as well at the overt acts within the forum taken in furtherance of the conspiracy.'"); *Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013) (Under the "conspiracy theory of jurisdiction," "the plaintiffs would have to make a plausible claim (1) that a conspiracy existed; (2) that the four bank defendants participated in the conspiracy; and (3) that a coconspirator's activities in furtherance of the conspiracy had sufficient contacts with Virginia to subject that conspirator to jurisdiction in Virginia."); *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir. 1997) (When asserting conspiracy theory of jurisdiction, "the plaintiff must plead with particularity 'the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy.'"); *Textor v. Bd. of Regents of N. Illinois Univ.*, 711 F.2d 1387, 1392 (7th Cir. 1983) ("The 'conspiracy theory' of personal jurisdiction is based on the time honored notion that the acts of a conspirator in furtherance of a conspiracy may be attributed to the other members of the conspiracy."); *Gemini Enterprises, Inc. v. WFMY Television Corp.*, 470 F. Supp. 559, 564 (M.D.N.C. 1979) ("The conspiracy theory of jurisdiction . . . seems to be based on the time honored notion that the acts of conspirator

in furtherance of a conspiracy may be attributed to the other members of the conspiracy."); *Raser Techs., Inc. v. Morgan Stanley & Co., LLC*, 449 P.3d 150, 166 (Utah 2019) ("[A] conspiracy theory of jurisdiction can satisfy due process concerns."); *Yoost v. Caspari*, 813 N.W.2d 783, 792 (Mich. App. 2012) ("Under the 'conspiracy theory' of jurisdiction, a conspirator not within the forum state may nevertheless be subject to the jurisdiction of the forum state on the basis of the acts a coconspirator committed there. The rationale for this rule is that when one member of a conspiracy inflicts an actionable wrong in one jurisdiction, the other member should not be allowed to escape being sued there by hiding in another jurisdiction." (Cleaned up)); *Gibbs v. PrimeLending*, 381 S.W.3d 829, 834 (Ark. 2011) ("[W]e find nothing that prohibits the use of the conspiracy theory of jurisdiction."); *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 487 (Md. 2006) ("[T]he acts of a co-conspirator in furtherance of the conspiracy may be attributed to other co-conspirators if the requirements of the conspiracy theory are met. The attribution principle enables a court to exercise jurisdiction over nonresidents involved in a conspiracy when a co-conspirator performs jurisdictionally sufficient acts in furtherance of the conspiracy.").

Federal district courts in West Virginia, applying West Virginia's long-arm statute, have applied the theory to assess whether a claim of civil conspiracy in a complaint adequately established the court's personal jurisdiction over a corporate agent. *See HSBC Bank USA, Nat. Ass'n v. Resh*, No. 3:12-CV-00668, 2015 WL 4772524, at *4 (S.D.W. Va. Aug. 12, 2015) ("To prevail using this theory of jurisdiction, a plaintiff must [show] . . . that (1) a conspiracy existed, (2) the out-of-state defendant participated in the conspiracy,

8

and (3) a coconspirator's activity in furtherance of the conspiracy created sufficient minimum contacts with West Virginia such that the coconspirator is subject to personal jurisdiction in West Virginia. . . . A plaintiff must . . . make a prima facie case demonstrating that the out-of-state defendant participated in a conspiracy, and that at least one coconspirator is subject to personal jurisdiction in the forum."); *Cline v. Hanby*, No. CIVA 2:05-0885, 2006 WL 3692647, at *7 (S.D.W. Va. Dec. 13, 2006) ("Under this theory when individuals conspire to do something that they could reasonably expect to have consequences in a particular forum, if one coconspirator who is subject to personal jurisdiction in the forum commits overt acts in furtherance of the conspiracy, those acts are attributable to the other co-conspirators, who thus become subject to personal jurisdiction even if they have no other contacts with the forum."); *Southeastern Const., Inc. v. Tanknology-NDE Int'l, Inc*., No. CIV.A. 3:05-210, 2005 WL 3536239, at *9 (S.D.W. Va. Dec. 22, 2005) ("The conspiracy theory of jurisdiction as developed in the cases, holds that when several individuals (1) conspire to do something (2) that they could reasonably expect to have consequences in a particular forum, if one co-conspirator (3) who is subject to personal jurisdiction in the forum (4) commits overt acts in furtherance of the conspiracy, those acts are attributable to the other co-conspirators, who thus become subject to personal jurisdiction even if they have no other contacts with the forum.").

MedTest alleges Highmark and the Blues "conspired to misrepresent to MedTest, other health care providers and their health insurance plan members that MedTest was an in-network provider[.]" MedTest also alleges that Highmark and the Blues

9

"combined, through concerted action, to accomplish an unlawful purpose by devising and perpetrating a fraudulent scheme to induce MedTest to provide laboratory testing services . . . without paying for them." Finally, MedTest contends Highmark and the Blues "colluded and combined their property, money, skill, and knowledge to carry out their scheme, misleading MedTest into performing millions of dollars of laboratory testing services for their members without compensation."

I believe these allegations were sufficient to allege a civil conspiracy claim and to support personal jurisdiction, because they indicate the existence of a civil conspiracy between the Blues and Highmark to inflict harm upon MedTest, harm that was caused in West Virginia by acts carried out in West Virginia by Highmark. The Blues should not be allowed to hide in other jurisdictions for harm they caused in West Virginia.

Finally, I am dismayed by the majority opinion's refusal to permit jurisdictional discovery to occur. Our law plainly permits jurisdictional discovery if a court has doubts about jurisdiction. *See Bowers v. Worzberg*, 202 W.Va. 43, 51, 501 S.E.2d 479, 487 (1998). The agency and conspiracy theories of jurisdiction are certainly fact-intensive approaches to showing purposeful availment. Without conducting any analysis, the majority opinion brusquely declares that jurisdiction over the Blues is inappropriate. At a minimum, I would have permitted the parties to conduct discovery.

I therefore respectfully dissent.