**C. Welles BELIN and Constance Reynolds Belin, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 68–42.**

United States District Court,
M. D. Pennsylvania.

March 31, 1970.

Welles & McGrath, Scranton, Pa., for plaintiffs.

S. John Cottone, U. S. Atty., Scranton, Pa., for defendant.

## MEMORANDUM

NEALON, District Judge.

Section 1034(a) and (c) (5)[1] of the Internal Revenue Code of 1954 provides that if a taxpayer receives a gain on the sale of his house, the gain is not taxable if within a year and a half he builds and moves into another house which costs as much or more than the first one sold for. The house which is sold must be used as the taxpayer's principal residence to qualify for this tax advantage.

The plaintiffs, husband and wife, are and were residents of Waverly in the Middle District of Pennsylvania. In 1932 they bought a house in Waverly called Rabbit Hollow and lived there until 1937. That year they bought a larger house called Rushbrook, also in Waver-

---

1. Internal Revenue Code of 1954:

"SEC. 1034. Sale or Exchange of Residence.

(a) *Nonrecognition of Gain.*—If property (in this section called "old residence") used by the taxpayer as his principal residence is sold by him after December 31, 1953, and, within a period beginning 1 year before the date of such sale and ending 1 year after such date, property (in this section called "new residence") is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price (as defined in subsection (b)) of the old residence ex-

ceeds the taxpayer's cost of purchasing the new residence.

\* \* \* \* \*

(c) *Rules for Application of Section.*—For purposes of this section:

\* \* \* \* \*

(5) In the case of a new residence the construction of which was commenced by the taxpayer before the expiration of one year after the date of the sale of the old residence, the period specified in subsection (a), and the 1 year referred to in paragraph (4) of this subsection, shall be treated as including a period of 18 months beginning with the date of the sale of the old residence.

\* \* \* "

ly, about a mile and a half from Rabbit Hollow; they moved in and lived there for five years. During those years, Rabbit Hollow was rented out continuously to tenants.

In 1942, to save fuel during the war years, they moved back to Rabbit Hollow and left Rushbrook vacant until 1946. In 1946, they moved back to Rushbrook and lived there until 1963. Rabbit Hollow was again rented to tenants under written leases until early 1963.

In the early 1960's, the plaintiffs decided to tear down Rushbrook and build a new house on the old foundation. In March, 1963, they moved back to Rabbit Hollow until this could be accomplished. By June of 1963, demolition was completed and for some time Rushbrook was just a hole in the ground. While the rebuilding was going on, the plaintiffs were almost constantly at the site supervising or observing the construction process. While the plaintiffs lived in Rabbit Hollow during this period, the furnishings from Rushbrook, too large for Rabbit Hollow, were placed in storage.

In April, 1964, the plaintiffs moved back to the new Rushbrook. The next month, Rabbit Hollow was sold for $35,000.00 to the plaintiffs' daughter and son-in-law. The gain on the sale was $25,841.62, and the tax assessed thereon by the Government was $6,258.-09. The cost of the new Rushbrook was $272,134.57.

The question in this case is whether Rabbit Hollow, where the taxpayers lived while construction progressed on the new Rushbrook, was the plaintiffs' principal residence within the meaning of Section 1034 of the 1954 Internal Revenue Code. If Rabbit Hollow became the taxpayers' principal residence, the plaintiffs owe no tax on the $25,-841.62 gain received.

The Government asserts that "principal residence" means the place (Rushbrook) which the taxpayers would have occupied if physically possible and the place they left with the finally realized

intention of returning. On the other hand, the taxpayers contend that Rushbrook could not be considered as their principal residence because no house existed there from March, 1963, through April, 1964.

"Residence" means "the place where one actually lives or has his house", or "a temporary or permanent dwelling place * * * to which one intends to return as distinguished from a place of temporary sojourn or transient visit." The word "principal" means "chief", "main", or "most important". Jacobs v. United States, 15 A.F.T.R.2d 95.

Defendant's brief notes that:

"By using the term 'principal residence,' rather than simply 'residence' alone, Congress was undoubtedly providing for situations involving a taxpayer owning more than one house. To allow physical occupancy alone to determine principal residence would permit an owner of more than one dwelling to shuttle back and forth whenever he could obtain a tax advantage by doing so. It is not reasonable to infer that, in using the qualifying term 'principal,' Congress intended such a result."

While this statement is no doubt true, it has no application here because (1) the Government doesn't challenge taxpayers' good faith and does not contend that they moved into Rabbit Hollow to obtain a tax advantage, and (2) there was only one house in existence during the critical period involved here and that house was Rabbit Hollow.

I have difficulty understanding how one is determined to have as his principal residence a piece of land which contains no building or structure whatsoever. It is not disputed that taxpayers had a residence from March, 1963, through April, 1964, and the Government apparently believes that it was the vacant land on which a new house was being constructed. While the Government makes many interesting technical arguments justifying this position, I prefer a common sense, practical ap-

proach. No doubt taxpayers intended to regard Rushbrook as their principal residence in futuro, but during the critical period involved here, Rabbit Hollow was their principal residence, as it was during two prior periods. Judgment will be entered for the plaintiffs. The parties are directed to submit an appropriate Order.