519 S.E.2d 148

Marvin T. BOWERS, et al., Plaintiffs
Below, Appellants,

v.

Gretchen WURZBURG, the Southland
Corporation, et al., Defendants
Below, Appellees.

No. 25842.

Supreme Court of Appeals of
West Virginia.

Submitted June 8, 1999.

Decided July 9, 1999.

Paul G. Taylor, Martinsburg, West Virginia, Attorney for the Appellants.

Charles F. Printz, Jr., Bowles Rice McDavid Graff & Love, PLLC, Martinsburg, West Virginia, Lester Sotsky, L. Elizabeth Bowles, Arnold & Porter, Washington, District of Columbia, Attorneys for the Appellees.

DAVIS, Justice:

The appellants herein and plaintiffs below, Marvin T. Bowers, Bessie C. Bowers, Esta

M. Bell, and John R. Bell [hereinafter collectively referred to as "the Bowerses"], appeal the June 10, 1998, order of the Circuit Court of Jefferson County dismissing their claims against the appellees herein and defendants below, Ito–Yokado Co., Ltd. [hereinafter referred to as "Ito"], Seven Eleven Japan Co., Ltd. [hereinafter referred to as "SEJ"], and IYG Holding Company [hereinafter referred to as "IYG"], on the basis of improper service of process. In addition, the Bowerses appeal the circuit court's July 30, 1998, order wherein it denied the Bowerses' motion to alter or amend judgment and upheld its earlier decision. Having reviewed the parties' arguments, the designated record, and the applicable authorities, we affirm, in part, the decision of the Circuit Court of Jefferson County. We agree with the lower court's ruling that the Bowerses did not properly serve Ito, SEJ, and IYG with process. However, we further modify, in part, the circuit court's decision and remand this case in order to permit the Bowerses to properly serve these defendants.

## I.

### FACTUAL AND PROCEDURAL HISTORY

This case, having recently been resolved by this Court insofar as the issues therein presented, has again arrived on our doorstep for deliberation and decision.[1] In December, 1994, a fire resulting from an explosion occurred in the home of Marvin and Bessie Bowers in Shepherdstown, West Virginia. Investigation of this incident led to the discovery of an underground gasoline leak at a nearby 7–Eleven convenience store and gasoline filling station. This leak allegedly caused the explosion and fire and affected the property of several other individuals in the surrounding area, forcing temporary evacuation of those residences. As a result of these damages, the Bowerses, in 1996, filed a class action suit in the Circuit Court of Jefferson County naming as defendants the owner of the property upon which the 7–Eleven was situated, Gretchen Wurzburg; the company that leased this property and owned and operated the 7–Eleven store, the Southland Corporation [hereinafter referred to as "Southland"]; and the purchasers of Southland's stock as a result of its reorganization in bankruptcy, Ito, SEJ (Ito's subsidiary), and IYG (a holding company jointly held by Ito and SEJ, which is a subsidiary of Ito and SEJ).[2]

In response to the Bowerses' pleading, the nonresident defendants filed a motion to dismiss the complaint asserting that they were not subject to personal jurisdiction in West Virginia, see W. Va. R. Civ. P. 12(b)(2), and that they had been improperly served with process, see W. Va. R. Civ. P. 12(b)(5).[3] Opposing the defendants' motion to dismiss, the Bowerses requested the circuit court to defer ruling until they had been permitted an opportunity to conduct discovery on the issue of personal jurisdiction. The circuit court denied jurisdictional discovery and dismissed the complaint as to the nonresident defendants based upon a lack of personal jurisdiction. Having resolved the dispute on jurisdictional grounds, the circuit court did not evaluate the nonresident defendants' argument regarding the sufficiency of process.

The Bowerses then appealed the circuit court's ruling to this Court. In *Bowers v. Wurzburg*, 202 W.Va. 43, 501 S.E.2d 479 (1998) [hereinafter referred to as "*Bowers*

---

1. The facts underlying the instant appeal are set forth in our prior decision, *see Bowers v. Wurzburg*, 202 W.Va. 43, 46–47, 501 S.E.2d 479, 482–83 (1998) [hereinafter referred to as *"Bowers I"*], and are reiterated herein to the extent necessary to establish the appropriate context for the issues presented by this appeal.

2. For ease of reference, Ito, SEJ, and IYG will be collectively referred to as "the nonresident defendants" throughout the text of this opinion, except where the context requires specific references to the individual corporations.

3. The applicable West Virginia Rules of Civil Procedure provide:

   Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (2) lack of jurisdiction over the person, ... (5) insufficiency of service of process....

   W. Va. R. Civ. P. 12(b)(2,5).

*I* "], we concluded that the circuit court had abused its discretion by refusing to permit discovery on the issue of personal jurisdiction. Without specifically deciding the jurisdictional question, we remanded this case to the Circuit Court of Jefferson County for the pursuit of discovery regarding the court's personal jurisdiction over the nonresident defendants. *See Bowers I*, 202 W.Va. at 52–53, 501 S.E.2d at 488–89.

On remand to the circuit court, the nonresident defendants promptly renewed their motion to dismiss the complaint based upon the undecided issue of insufficiency of service of process. The Bowerses opposed the defendants' motion. Granting the nonresident defendants' motion to dismiss and finding that process as to them had been insufficiently served, the circuit court, by order entered June 10, 1998, concluded:

1. IY [Ito] was not properly served with process because (i) the Secretary of State of West Virginia is not its attorney-in-fact; and (ii) even if the Secretary was IY's [Ito's] attorney-in-fact, the Secretary failed to transmit the summons and complaint to IY's [Ito's] principal office in Tokyo, Japan, as required by W. Va.Code § 31–1–15.

2. SEJ was not properly served with process because (i) the Secretary is not its attorney-in-fact; and (ii) even if the Secretary was SEJ's attorney-in-fact, the Secretary failed to transmit the summons and complaint to SEJ's principal office in Tokyo, Japan, as required by W. Va.Code § 31–1–15. Further, plaintiffs have not demonstrated that SEJ is the alter ego of IY [Ito] or that IY [Ito] is authorized to accept service of process on behalf of SEJ.

3. IYGH [IYG] was not properly served with process because (i) the Secretary is not its attorney-in-fact; and (ii) even if the Secretary was IYGH's [IYG's] attorney-in-fact, the Secretary failed to transmit the summons and complaint to IYGH's [IYG's] principal office, as required by W. Va.Code § 31–1–15. Further, plaintiffs' attempt to serve IYGH [IYG] in Dallas, Texas, where process was sent is ineffective because IYGH [IYG] does not maintain an office there.

4. The Complaint against IY [Ito], SEJ and IYGH [IYG] is hereby dismissed pursuant to West Virginia Rule of Civil Procedure 12(b)(5).

Following the circuit court's decision, the Bowerses filed a motion to alter or amend judgment pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure.[4] In their motion, the Bowerses alleged that the circuit court had erroneously determined that process was insufficient as to the nonresident defendants and that the circuit court improperly denied jurisdictional discovery in light of this Court's prior decision permitting such discovery. By order entered July 30, 1998, the circuit court denied the Bowerses their requested relief. From these orders of the circuit court, the Bowerses appeal to this Court.

## II.

### STANDARD OF REVIEW

■ The posture of this appeal requires us to review the circuit court's decision to dismiss the Bowerses' complaint as to the nonresident defendants; to examine that court's denial of relief pursuant to W. Va. R. Civ. P. 59(e); and to evaluate its interpretation of the relevant law upon which it based this dismissal. Prior to reaching the specific standards of review applicable to these decisions, however, we must address an important contention raised by the nonresident defendants: whether the circuit court's orders are in fact appealable orders in that they rendered judgment as to fewer than all of the parties, *i.e.*, defendants, involved in this litigation. Upon a review of the relevant authorities, we conclude that these orders are final and appealable orders within the context of these proceedings.

---

**4.** W. Va. R. Civ. P. 59(e) directs "[a]ny motion to alter or amend the judgment shall be filed not later than 10 days after entry of the judgment."

Rule 54(b) of the West Virginia Rules of Civil Procedure counsels that

> when multiple parties are involved [in an action], the court may direct the entry of a final judgment as to one or more but fewer than all of the ... parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates ... the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the ... parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating ... the rights and liabilities of all the parties.

Interpreting this rule, we have held that "[t]he key to determining if an order is final is not whether the language from Rule 54(b) of the West Virginia Rules of Civil Procedure is included in the order, but is whether the order approximates a final order in its nature and effect...." Syl. pt. 1, in part, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995). *See also* Syl. pt. 4, in part, *Riffe v. Armstrong*, 197 W.Va. 626, 477 S.E.2d 535 (1996) ("Whether an order dismissing fewer than all of the parties or fewer than all the claims in a civil action, which does not contain the express determinations set forth in Rule 54(b) of the West Virginia Rules of Civil Procedure, was intended to be final and is therefore appealable before the entire action is terminated will be determined by this Court from all the circumstances and the terms of the order....").

■ Neither of the orders forming the basis of this appeal indicate, in express language, that they were intended to be final and appealable orders as to the parties affected thereby. Nevertheless, it is apparent from their "nature and effect" that they "approximate[ ] ... final order[s]." Syl. pt. 1, in part, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516. With respect to the circuit court's order dismissing the complaint as to defendants Ito, SEJ, and IYG, we discern

that the practical effect of this ruling is to terminate the litigation as to these nonresident defendants. "If the effect of a dismissal of a complaint is to dismiss the action, such that it cannot be saved by amendment of the complaint, or if a plaintiff declares his intention to stand on his complaint, an order to dismiss is final and appealable." Syl. pt. 1, *Pittsburgh Elevator Co. v. West Virginia Bd. of Regents*, 172 W.Va. 743, 310 S.E.2d 675 (1983). Given the circumstances surrounding the dismissal of the Bowerses' complaint as to these defendants, it is apparent that it cannot be saved by amendment: the language of the complaint, itself, was not determined to be defective, but rather its method of service. Therefore, we conclude that the circuit court's order dismissing the Bowerses' complaint as to defendants Ito, SEJ, and IYG is a final and appealable order.

■ Similarly, the circuit court's order refusing the Bowerses' request to alter or amend its judgment of dismissal is also an appealable order. Regarding such motions, we specifically have held that "[a]n appeal may be taken from a final order disposing of a motion under Rule 59(e) of the West Virginia Rules of Civil Procedure at any time within the appeal period provided by the entry of the order or within any proper extension of the appeal period." Syl. pt. 8, *Riffe v. Armstrong*, 197 W.Va. 626, 477 S.E.2d 535. As the second contested order disposed of the Bowerses' Rule 59(e) motion, we deem it to be appealable. Finding the Bowerses' appeal of the circuit court's orders to be properly before this Court, we proceed to consider the applicable standards of review.

■ In the proceedings underlying this appeal, the circuit court dismissed the Bowerses' complaint as to Ito, IYG, and SEJ due to improper service of process. We repeatedly have held that " '[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*.' Syl. pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995)." Syl. pt. 1, *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 200 W.Va. 221, 488 S.E.2d 901 (1997). Likewise, our review of the lower court's refusal

of the Bowerses' Rule 59(e) motion to alter or amend its earlier judgment of dismissal is also *de novo:*

> The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.

Syl. pt. 1, *Wickland v. American Travellers Life Ins. Co.*, 204 W.Va. 430, 513 S.E.2d 657 (1998).

■ Inherent in our review of the circuit court's decision to dismiss the Bowerses' complaint is the attendant determination by that court finding the complaint to have been improperly served. In rendering this ruling, the circuit court interpreted and applied certain statutory provisions which provide guidelines for serving defendants who do not reside in the State of West Virginia: W. Va.Code § 31–1–15 (1984) (Repl.Vol.1996) and W. Va.Code § 56–3–33 (1984) (Repl.Vol. 1997). As with a circuit court's decision to dismiss a complaint, we review *de novo* a circuit court's ruling regarding a question of law or the interpretation of a statute. *See* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where

the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). Having set forth the relevant standards of review, we turn now to the Bowerses' assignments of error.

### III.

### DISCUSSION

■ On appeal to this Court, the Bowerses assign as error the circuit court's dismissal of their complaint as to defendants Ito, SEJ, and IYG based upon insufficient service of process.[5] They contend that their method of serving these defendants by serving the West Virginia Secretary of State as the nonresident defendants' attorney in fact was proper and complied with the service requirements contained in W. Va.Code § 31–1–15 (1984) (Repl.Vol.1996) and W. Va.Code § 56–3–33 (1984) (Repl.Vol.1997). By contrast, the nonresident defendants dispute that service of process in the manner attempted by the Bowerses was proper. In this regard, Ito, SEJ, and IYG argue that service through the West Virginia Secretary of State was improper as the secretary was not their attorney in fact. The nonresident defendants further complain that the Bowerses failed to comply with various provisions

---

5. While the Bowerses present two assignments of error for resolution in this appeal, we deem only one of these issues to be proper for consideration herein. The Bowerses first contest the circuit court's order dismissing their complaint based upon invalid service thereof upon defendants Ito, SEJ, and IYG. In addition, the Bowerses complain that the circuit court improperly denied them the opportunity to conduct jurisdictional discovery in accordance with our decision in *Bowers I*, 202 W.Va. at 52–53, 501 S.E.2d at 488–89. It is this second assignment of error that we find to be prematurely contested in this appeal. Valid service of process is necessary to notify a potential defendant of the institution and pendency of a lawsuit against him/her and to bring that particular defendant before the presiding judicial tribunal. 14B Michie's Jurisprudence *Process* § 3, at 434 (Repl.Vol.1988) ("The object of the service of process is to notify a party of the suit and bring him into court." (footnotes omitted)). *See also Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700, 108 S.Ct. 2104, 2108, 100 L.Ed.2d 722, 731 (1988) ("Service of process refers to a formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action." (cita-

tions omitted)). By contrast, questions of the governing court's assertion of personal jurisdiction are proper only after the defendant has been properly served and is present before the court. 14B Michie's Jurisprudence *Process* § 5, at 438–39 ("It is well settled that the issuance and service of process in the manner prescribed by law, unless waived, is essential to the jurisdiction of all courts. It is the fact of service which gives the court jurisdiction." (footnote omitted)). In other words, service of process brings the defendant before the court, and personal jurisdiction contemplates whether the defendant is properly before the court so as to permit the tribunal to exercise jurisdiction over his/her person. As the crux of the circuit court's orders from which the Bowerses appeal to this Court concerns the dismissal of their complaint due to invalid service of process, the issue of jurisdictional discovery is premature. Only after service has been properly effected and the defendants have been brought before the court is the consideration of personal jurisdiction, and requisite discovery to ascertain such jurisdiction, appropriate. Therefore, we decline to consider the Bowerses' second assignment of error regarding jurisdictional discovery as this issue is not yet ripe for determination.

of federal law governing service abroad, which are embodied in the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, *done* Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6,638, *reprinted in* 28 U.S.C.A. Fed.R.Civ.P. 4, at 124–48 (Cum.Supp.1999).

In considering the error assigned in this appeal, we are mindful of the very complex factual situation with which we are faced and the competing sets of law which govern this controversy. On the one hand are the mandates of the West Virginia Rules of Civil Procedure, which specify how service is to be achieved,[6] and the statutory provisions, which clarify these procedures.[7] On the other hand are the directives of international treaty law, which have been adopted by the countries whose citizens are interested in this dispute, the United States and Japan, and which seek to facilitate service of process in cases and controversies involving internationally diverse parties.[8] Mindful of these various bodies of law, we proceed to examine the propriety of the Bowerses' service upon the various nonresident defendants.

Rule 4 of the West Virginia Rules of Civil Procedure dictates how process is to be served upon potential defendants. Specifically, service "[u]pon a foreign corporation ... which has not qualified to do business in the State" of West Virginia [9] is made

(A) by delivering or mailing in accordance with paragraph (1) [10] above a copy of the summons and complaint to any officer, director, trustee, or agent of such corporation; or

(B) by delivering or mailing in accordance with paragraph (1) [11] above copies thereof to any agent or attorney in fact authorized by appointment or by statute to receive or accept service in its behalf.

W. Va. R. Civ. P. 4(d)(8) (footnotes added).

Expounding upon the notion of service of process upon a corporation's attorney in fact, as permitted by W. Va. R. Civ. P. 4(d)(8)(B), W. Va.Code § 56–3–33 (1984) (Repl.Vol.1997) directs that

(a) [t]he engaging by a nonresident [12], or by his duly authorized agent [13], in any

---

6. *See* W. Va. R. Civ. P. 4.

7. *See* W. Va.Code §§ 31–1–15 (1984) (Repl.Vol. 1996); 56–3–33 (1984) (Repl.Vol.1997).

8. *See* Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, *done* Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6,638, *reprinted in* 28 U.S.C.A. Fed.R.Civ.P. 4, at 124–48 (Cum.Supp. 1999).

9. The parties represent that none of the nonresident defendants, Ito, SEJ, or IYG, are qualified to do business in this State.

10. Paragraph (1) of W. Va. R. Civ. P. 4(d) provides, in relevant part:

(d) *Manner of service.*—Personal or substituted service shall be made in the following manner:

(1) Individuals.—Service upon an individual other than an infant, incompetent person, or convict may be made by:

(A) Delivering a copy of the summons and complaint to the individual personally; or

(B) Delivering a copy of the summons and complaint at the individual's dwelling place or usual place of abode to a member of the individual's family who is above the age of sixteen (16) years and by advising such person of the purport of the summons and complaint; or

(C) Delivering a copy of the summons and complaint to an agent or attorney-in-fact authorized by appointment or statute to receive or accept service of the summons and complaint in the individual's behalf; or

(D) The clerk sending a copy of the summons and complaint to the individual to be served by certified mail, return receipt requested, and delivery restricted to the addressee; or

(E) The clerk sending a copy of the summons and complaint by first class mail, postage prepaid, to the person to be served, together with two copies of a notice and acknowledgment conforming substantially to Form 14 and a return envelope, postage prepaid, addressed to the clerk.

11. *See supra* note 10.

12. W. Va.Code § 56–3–33(e)(2) defines a "nonresident" as

any person, other than voluntary unincorporated associations, who is not a resident of this State or a resident who has moved from this State subsequent to engaging in such act or acts, and among others includes a nonresident firm, partnership or corporation or a firm, partnership or corporation which has moved from this State subsequent to any of said such act or acts.

13. The term

"[d]uly authorized agent" means and includes among others a person who, at the

one or more of the acts specified in subdivisions (1) through (7) of this subsection shall be deemed equivalent to an appointment by such nonresident of the secretary of state, or his successor in office, to be his true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him, in any circuit court in this State, ... for a cause of action arising from or growing out of such act or acts, and the engaging in such act or acts shall be a signification of such nonresident's agreement that any such process against him, which is served in the manner hereinafter provided, shall be of the same legal force and validity as though such nonresident were personally served with a summons and complaint within this State:

(1) Transacting any business in this State;

(2) Contracting to supply services or things in this State;

(3) Causing tortious injury by an act or omission in this State;

(4) Causing tortious injury in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;

(5) Causing injury in this State to any person by breach of warranty expressly or impliedly made in the sale of goods outside this State when he might reasonably have expected such person to use, consume or be affected by the goods in this State: Provided, That he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;

(6) Having an interest in, using or possessing real property in this State; or

(7) Contracting to insure any person, property or risk located within this State at the time of contracting.

. . . .

(c) . . . . Service shall be made by leaving the original and two copies of both the summons and the complaint with the certificate aforesaid [of bond execution and approval] of the clerk thereon, and a fee of five dollars with the secretary of state, or in his office, and such service shall be sufficient upon such nonresident: Provided, That notice of such service and a copy of the summons and complaint shall forthwith be sent by registered or certified mail, return receipt requested, by the secretary of state to the defendant and the defendant's return receipt signed by himself or his duly authorized agent or the registered or certified mail so sent by the secretary of state which is refused by the addressee and which registered or certified mail is returned to the secretary of state, or to his office, showing thereon the stamp of the post-office department that delivery has been refused, shall be appended to the original summons and complaint and filed herewith in the clerk's office of the court from which process issued . . . . [14]

(Footnotes added).

Further clarifying the "transacting business" language of W. Va.Code § 56–3–33(a)(1), W. Va.Code § 31–1–15 (1984) (Repl. Vol.1996) provides additional guidance for serving a nonresident corporation with process through the West Virginia Secretary of State. *See Abbott v. Owens–Corning Fiberglas Corp.,* 191 W.Va. 198, 207, 444 S.E.2d 285, 294 (1994) ("*W. Va.Code,* 31–1–15 [1984] is merely an elaboration on the transacting business provision of *W. Va.Code,* 56–3–33(a) [1984].").  In pertinent part, § 31–1–15 mandates:

direction of or with the knowledge or acquiescence of a nonresident, engages in such act or acts and includes among others a member of the family of such nonresident or a person who, at the residence, place of business or post office of such nonresident, usually receives and receipts for mail addressed to such nonresident.

W. Va.Code § 56–3–33(e)(1).

14. W. Va.Code § 56–3–33 (1984) (Repl.Vol. 1997), which governs the case *sub judice,* recently has been amended. *See* W. Va.Code § 56–3–33 (1997) (Supp.1998).  However, these amendments are not substantial and do not affect our decision of this matter.

Any foreign corporation which shall conduct affairs or do or transact business in this State without having been authorized so to do pursuant to the provisions of this article shall be conclusively presumed to have appointed the secretary of state as its attorney-in-fact with authority to accept service of notice and process on behalf of such corporation and upon whom service of notice and process may be made in this State for and upon every such corporation in any action or proceeding described in the next following paragraph of this section. No act of such corporation appointing the secretary of state as such attorney-in-fact shall be necessary. Immediately after being served with or accepting any such process or notice, of which process or notice two copies for each defendant shall be furnished the secretary of state with the original notice or process, together with a fee of five dollars, the secretary of state shall file in his office a copy of such process or notice, with a note thereon endorsed of the time of service or acceptance, as the case may be, and transmit one copy of such process or notice by registered or certified mail, return receipt requested, to such corporation at the address of its principal office, which address shall be stated in such process or notice. Such service or acceptance of such process or notice shall be sufficient if such return receipt shall be signed by an agent or employee of such corporation, or the registered or certified mail so sent by the secretary of state is refused by the addressee and the registered or certified mail is returned to the secretary of state, or to his office, showing thereon the stamp of the United States postal service that delivery thereof has been refused, and such return receipt or registered or certified mail is appended to the original process or notice and filed therewith in the clerk's office of the court from which such process or notice was issued....

For the purpose of this section, a foreign corporation not authorized to conduct affairs or do or transact business in this State pursuant to the provisions of this article shall nevertheless be deemed to be conducting affairs or doing or transacting business herein (a) if such corporation makes a contract to be performed, in whole or in part, by any party thereto, in this State, (b) if such corporation commits a tort in whole or in part in this State, or (c) if such corporation manufactures, sells, offers for sale or supplies any product in a defective condition and such product causes injury to any person or property within this State notwithstanding the fact that such corporation had no agents, servants or employees or contacts within this State at the time of said injury. The making of such contract, the committing of such tort or the manufacture or sale, offer of sale or supply of such defective product as hereinabove described shall be deemed to be the agreement of such corporation that any notice or process served upon, or accepted by, the secretary of state pursuant to the next proceeding paragraph of this section in any action or proceeding against such corporation arising from, or growing out of, such contract, tort, or manufacture or sale, offer of sale or supply of such defective product shall be of the same legal force and validity as process duly served on such corporation in this State.[15]

(Footnote added). *Accord* Syl. pt. 2, *Schweppes U.S.A. Ltd. v.. Kiger,* 158 W.Va. 794, 214 S.E.2d 867 (1975).

Also applicable to the case *sub judice* are certain aspects of federal law. In addition to the pronouncements of state law governing service of process on corporate defendants who are not residents of West Virginia noted above, international defendants receive further protections via international treaty law which has been adopted by the United States. The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters [hereinafter referred to as "the Hague Service Convention"] expressly applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or

---

15. Although W. Va.Code § 31–1–15 (1984) (Repl. Vol.1996) has been modified, such alterations are not relevant to our consideration of this statute in the context of the instant appeal. *See* W. Va.Code § 31–1–15 (1997) (Supp.1998).

extrajudicial document for service abroad." Hague Service Convention, *done* Nov. 15, 1965, art. 1, para. 1, 20 U.S.T. 361, T.I.A.S. No. 6,638, *reprinted in* 28 U.S.C.A. Fed. R.Civ.P. 4, at 124–48 (Cum.Supp.1999).[16]

■ Briefly stated, the Hague Service Convention requires, in cases to which it applies, service of the subject document on the intended recipient in that recipient's home country in order to ensure such recipient receives notice of the proceedings to which he/she has been named a party. Hague Service Convention, statement of resolution, para. 1 (defining purpose as "[d]esiring to create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time"); *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698, 108 S.Ct. 2104, 2107, 100 L.Ed.2d 722, 730 (1988) (stating intent of Hague Service Convention to be "to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad" (citations omitted)).[17] The practical effect of this Convention is, "[b]y virtue of the Supremacy Clause, U.S. Const., Art. VI [18], the . . . pre-empt[ion of] inconsistent methods of service prescribed by state law in all cases to which [the Convention] applies." *Schlunk*, 486 U.S. at 699, 108 S.Ct. at 2108, 100 L.Ed.2d at 730 (footnote added). Despite this pre-emptive effect, the United States Supreme Court has recognized that such pre-emption will occur in very limited circumstances, *i.e.*, only "[i]f the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad." *Id.*, 486 U.S. at 700, 108 S.Ct. at 2108, 100 L.Ed.2d at

731. With these principles in mind, we turn now to evaluate the sufficiency of the process with which the Bowerses served Ito, SEJ, and IYG.

### A. Service of Process on Defendant Ito

■ The first nonresident defendant, Ito, is a Japanese company, with its principal office in Tokyo, Japan. Because Ito also does business in the United States, the Bowerses served Ito at its main place of business in the United States in Seattle, Washington. This service was accomplished by serving the summons and complaint upon the Secretary of State of West Virginia as Ito's attorney in fact. *See* W. Va.Code §§ 31–1–15; 56–3–33. The secretary of state then sent a copy of the summons and complaint to Ito's Seattle office, and received a return receipt indicating that Ito had received the pleading. Additionally, the Bowerses served Ito through its registered agent,[19] Lawco of Washington, Inc. [hereinafter referred to as "Lawco"], who is also located in Seattle, Washington. Again, the Bowerses served the secretary of state with the summons and complaint, as Lawco's attorney in fact, and the secretary forwarded the documents to Lawco and received a return receipt indicating their receipt.

■ Apparently in conformity with W. Va.Code §§ 31–1–15 and 56–3–33, the Bowerses attempted to serve Ito through the West Virginia Secretary of State. In its order dismissing the complaint as to Ito, the circuit court concluded that the Bowerses had failed to establish that Ito had engaged in any of the activities enumerated in these statutory provisions so as to render it amenable to service of process through the secre-

---

**16.** Both the United States and Japan are signatories to this treaty. Hague Service Convention, 28 U.S.C.A. Fed.R.Civ.P. 4, at 131 (Cum.Supp. 1999).

**17.** The Hague Service Convention also dictates, when service is made in the recipient's home country, that the document served be translated into that country's official language. Art. 5, para. 3.

**18.** The Supremacy Clause directs that

[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. U.S. Const. art. VI, cl. 2.

**19.** The Bowerses represent that a registered agent is one who is appointed to accept service of process for another.

tary of state. The Bowerses counter that they have been unable to develop sufficient proof of these contacts. Generally, the allegations contained in a complaint are to consist of "a short and plain statement of the claim showing that the pleader is entitled to relief," W. Va. R. Civ. P. 8(a)(1), in order to place a potential defendant on notice as to the nature of the claim(s) asserted against him/her. *Consolidation Coal Co. v. Boston Old Colony Ins. Co.*, 203 W.Va. 385, 391, 508 S.E.2d 102, 108 (1998) ("[C]omplaints are to be read liberally in accordance with the notice pleading theory underlying the West Virginia Rules of Civil Procedure." (citation omitted)); *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 776, 461 S.E.2d 516, 522 (1995) (same). *See also* W. Va. R. Civ. P. 8(e)(1) ("Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required."). In construing the adequacy of a complaint, the allegations contained therein are viewed liberally in favor of the plaintiff. *Lodge Distrib. Co., Inc. v. Texaco, Inc.*, 161 W.Va. 603, 605, 245 S.E.2d 157, 158 (1978) ("For purposes of the motion to dismiss, the complaint is construed in the light most favorable to plaintiff, and its allegations are to be taken as true."). *See also S.R. v. City of Fairmont*, 167 W.Va. 880, 890 n. 7, 280 S.E.2d 712, 718 n. 7 (1981) ("constru[ing] plaintiff's factual allegation in the light most favorable to her" in "certified question [case] based on a motion to dismiss" (citation omitted)). Given these strictures for viewing the adequacy of a complaint, we find that the Bowerses' pleading adequately placed defendant Ito on notice as to the basis for serving it with process in this manner. *See Bowers I*, 202 W.Va. at 52, 501 S.E.2d at 488.

Finding these provisions to apply to defendant Ito, then, it is necessary to determine whether the Bowerses complied with the remaining requirements for service of process through the secretary of state as Ito's attorney in fact. Once the secretary of state has been identified as being capable of accepting service of process on behalf of a nonresident defendant and the plaintiff has served the secretary of state accordingly, the secretary is required, in turn, to send such pleading to the named nonresident defendant. Difficulty arises, however, in ascertaining the precise address of the nonresident defendant to which the pleading should be sent.[20] W. Va.Code § 56-3-33(c), which applies to all nonresident defendants, simply directs that a copy of the summons and complaint shall be sent to "the defendant." By contrast, W. Va.Code § 31-1-15, which pertains to all nonresident defendants who are corporations, specifies that the pleading shall be sent to the "corporation at the address of its principal office." Typically, when two statutes govern a particular scenario, one being specific and one being general, the specific provision prevails. Syl. pt. 6, *Albright v. White*, 202 W.Va. 292, 503 S.E.2d 860 (1998) (" ' "The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled." Syllabus Point 1, *UMWA by Trumka v. Kingdon*, 174 W.Va. 330, 325 S.E.2d 120 (1984).' Syllabus point 1, *Whitlow v. Board of Education of Kanawha County*, 190 W.Va. 223, 438 S.E.2d 15 (1993)."). As § 31-1-15 applies specifically to nonresident *corporate* defendants, *Abbott v. Owens-Corning Fiberglas Corp.*, 191 W.Va. at 207, 444 S.E.2d at 294, in contrast to defendants generally, *see* § 56-3-33, it is apparent that the appropriate language to prefer is that of § 31-1-15. Accordingly, we hold that when the Secretary of State of West Virginia is deemed to be the attorney in fact for a nonresident defendant corporation pursuant to W. Va.Code § 31-1-15 (1984) (Repl.Vol.1996) and W. Va.Code § 56-3-33 (1984) (Repl.Vol.1997), the address to which the secretary of state should transmit the summons, complaint, notice, or process is the address of the nonresident defendant corporation's principal office.

20. W. Va.Code § 31-1-15 implicitly requires the plaintiff to provide the secretary of state with the address of the nonresident defendant to which the pleading should be sent. *See* W. Va.Code § 31-1-15 (noting that secretary of state shall transmit notice or process to foreign "corporation at the address of its principal office, *which address shall be stated in such process or notice*" (emphasis added)).

It is now necessary to determine what comprises a nonresident corporate defendant's "principal office." In the absence of a precise statutory definition, words employed in a legislative enactment are to be given their common, ordinary, and accepted usage. Syl. pt. 5, *Daily Gazette Co., Inc. v. West Virginia Dev. Office,* 206 W.Va. 51, 521 S.E.2d 543, 1999 WL 312156 (1999) (" ' "In the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used." Syllabus Point 1, *Miners in General Group v. Hix,* 123 W.Va. 637, 17 S.E.2d 810 (1941), *overruled on other grounds [by ] Lee–Norse Co. v. Rutledge,* 170 W.Va. 162, 291 S.E.2d 477 (1982).' Syllabus point 1, *McCoy v. VanKirk,* 201 W.Va. 718, 500 S.E.2d 534 (1997)."). Although a particular body of legislation may not define a particular term contained therein, statutes relating to the same subject matter must be construed *in pari materia,* and not inconsistently with one another. *See* Syl. pt. 3, *Boley v. Miller,* 187 W.Va. 242, 418 S.E.2d 352 (1992) (" 'Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments.' Syllabus Point 3, *Smith v. State Workmen's Compensation Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975)."); *State v. Kerns,* 183 W.Va. 130, 135, 394 S.E.2d 532, 537 (1990) (recognizing "duty of this Court to avoid whenever possible a construction of a statute which leads to absurd, inconsistent, unjust or unreasonable results").

While not expressly defined within the confines of § 31–1–15, the term "principal office" is defined elsewhere in the West Virginia Code. In W. Va.Code § 31B–1–101(15) (1996) (Repl.Vol.1996), in the context of a specialized type of organizational entity, a limited liability company, the term "principal office" is defined as "the office, whether or not in this state, where the principal executive office of a domestic or foreign limited liability company is located." This construction is consistent with the commonly accepted meaning ascribed to this term. *See Ebanks v. Grace Line, Inc.,* 73 F.Supp. 749, 750 (S.D.N.Y.1947) ("The words 'principal office' have a definite meaning, especially when applied to a corporation, in which case they mean the head office, the place where the principal officers generally transact business, and the place to which reports are made and from which orders emanate." (internal quotations and citation omitted)); *In re Princeton Bank & Trust Co.,* 87 N.J.Super. 247, 260, 208 A.2d 820, 827 (1965) (equating " 'principal office' " with " 'main office' "); *Bozeman v. Arlington Heights Sanitarium,* 134 S.W.2d 350, 352 (Tex.Civ.App.1939) (construing "principal office of a corporation" as "the place where the principal affairs, business and otherwise of the company are transacted, and where the officers and agents of the company are expected to be in the performance of their duties for the company during office hours"); Black's Law Dictionary 1083 (6th ed. 1990) ("The principal office of a corporation is its headquarters, or the place where the chief or principal affairs and business of the corporation are transacted. Usually it is the office where the company's books are kept, where its meetings of stockholders are held, and where the directors, trustees, or managers assemble to discuss and transact the important general business of the company ...."). Therefore, we hold that a nonresident defendant corporation's principal office is that office, whether or not in this State, where the principal executive office of the nonresident defendant corporation is located.

In order to comply with the pronouncements of W. Va.Code §§ 31–1–15 and 56–3–33, then, the secretary of state was required to transmit the summons and complaint to Ito at its principal office in Tokyo, Japan. Contrary to the argument advanced by the Bowerses to support their contention that service was proper at Ito's main United States location in Seattle, Washington, we find nothing in the language of these code sections or in the definition of principal office to suggest that an international corporation might have more than one principal office. In fact, the ordinary connotation of the word "principal" signifies a singular main, primary, or chief basis of operations. *See Belin v. United States,* 313 F.Supp. 715, 716 (M.D.Pa.

1970) (declaring term "principal" to mean "chief, main, or most important" (internal quotations and citation omitted)); *Standard Oil Co. v. Commonwealth,* 110 Ky. 821, 823, 23 Ky. L. Rptr. 302, 303, 62 S.W. 897, 898 (1901) (recognizing "principal" as signifying "[h]ighest in rank, authority, character, importance, or degree; most considerable or important; chief; main" (internal quotations and citation omitted)); *Stilwell Co. v. Commissioner of Taxation,* 257 Minn. 118, 122, 100 N.W.2d 504, 507 (1959) (same); Black's Law Dictionary, at 1192 (defining "principal" as "[c]hief; leading; most important or considerable; primary; original ... [h]ighest in rank, authority, character, importance, or degree"). Therefore, because the Bowerses did not cause defendant Ito to be served, through the secretary of state, at its principal office in Tokyo, Japan, the circuit court was correct in finding that service as to this defendant was invalid.

▮▮▮▮ At this juncture it is important to note that where, as here, the principal office of a nonresident defendant corporation is located outside of the United States, W. Va. Code §§ 31–1–15 and 56–3–33 impliedly require service of process, through the secretary of state, abroad. *See* Syl. pt. 4, *Smith v. State Workmen's Compensation Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (" 'That which is necessarily implied in a statute, or must be included in it in order to make the terms actually used have effect, according to their nature and ordinary meaning, is as much a part of it as if it had been declared in express terms.' *Syllabus* point 14., *State v. Harden,* 62 W.Va. 313, 58 S.E. 715 (1907)."). In such instances, the service of process guidelines of the Hague Service Convention are implicated and dictate the precise manner in which process is required to be served. Indeed, when state law requires service abroad, the Hague Service Convention pre-empts the coordinate state law. U.S. Const. art. VI, cl. 2; *Schlunk,* 486 U.S. at 699–700, 108 S.Ct. at 2108, 100 L.Ed.2d at 730–31. Observing the mandates of federal law, we hold that when W. Va.Code § 31–1–15 (1984) (Repl.Vol.1996) and W. Va.Code § 56–3–33 (1984) (Repl.Vol. 1997) require the West Virginia Secretary of State to transmit a summons, complaint, notice, or process to a nonresident defendant

international corporation at its principal office, which office is located outside of the United States, service abroad is impliedly required. To the extent that the service of process provisions of W. Va.Code § 31–1–15 and W. Va.Code § 56–3–33, as they pertain to a nonresident defendant international corporation, conflict with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, *done* Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6,638, *reprinted in* 28 U.S.C.A. Fed.R.Civ.P. 4, at 124–48 (Cum.Supp.1999), these state laws are pre-empted by the corresponding federal law.

▮▮▮▮ In light of this holding, we conclude further that the Bowerses' attempt to serve Ito through the secretary of state in accordance with W. Va.Code §§ 31–1–15 and 56–3–33 was invalid as it did not comply with the requirements of the Hague Service Convention. When this Convention is found to apply, it requires process to be served on the nonresident defendant in his/her home nation and in the official language, or one of the official languages if there be more than one, of such country. Hague Service Convention, art. 3, para. 1; art. 5, para. 3. Both the Bowerses and defendant Ito represent that no service was attempted outside of the United States, thus suggesting that service was not specifically attempted in the nation of Japan. As the Bowerses have failed to properly serve Ito in accordance with the Hague Service Convention, we find that the circuit court properly dismissed their complaint as to this defendant.

Our inquiry does not end here, however, as the Bowerses attempted to serve Ito via a second route: by serving Lawco, Ito's registered agent in the State of Washington, through the West Virginia Secretary of State as Lawco's attorney in fact. W. Va. R. Civ. P. 4(d)(8)(B) authorizes service of process through an agent appointed expressly for that purpose. *See* W. Va. R. Civ. P. 4(d)(8)(B) (authorizing service of process on foreign corporation not qualified to do business in West Virginia by delivering or mailing summons and complaint "to any agent or attorney in fact authorized by appointment

or by statute to receive or accept service in its behalf"). However, upon viewing the statutes which govern such appointment, we conclude that such agent must have been registered or appointed in the State of West Virginia in order to be amenable to service of process for litigation in this State. W. Va. Code § 31–1–56 (1975) (Repl.Vol.1996) permits a corporation to designate an individual other than the corporation, itself, to accept service of process on its behalf.

(a) A corporation may at any time appoint a person other than the corporation to whom notice or process served upon the secretary of state or service of which is accepted by the secretary of state may be sent, as required by section fifteen [§ 31–1–15] of this article, *by filing with the secretary of state a statement setting forth:*

(1) The name of the corporation and the state of its incorporation.

(2) The present address of its principal office.

(3) *Express appointment of and the name and address of the person to whom notice or process shall be sent by the secretary of state under section fifteen [ § 31–1–15] of this article.*

(4) Express authority to the secretary of state to send to such person at the address given, all notices and process served upon the secretary of state or service of which is accepted by the secretary of state.

(5) That such appointment was duly authorized by the board of directors of the corporation.[21]

*Id.* (Emphasis and footnote added). *See also* W. Va.Code § 31–1–27(a)(4) (1976) (Repl.Vol. 1996) (requiring inclusion in articles of incorporation "the name and address of the person to whom shall be sent notice or process served upon, or service of which is accepted by, the secretary of state, if such person has been appointed by the corporation"). Likewise, foreign corporations applying for a "certificate of authority to conduct affairs . . . or do or transact business in this state," W. Va.Code § 31–1–53(a) (1989) (Repl.Vol.1996), may also appoint an alternative recipient for service of process. *See* W. Va.Code § 31–1–

53(a)(5) (ordering application for certificate of authority to contain "[t]he name and address of the person to whom shall be sent notice or process served upon, or service of which is accepted by, the secretary of state, if one has been designated").

■ Of key importance to a corporation's ability to appoint an agent to accept service of process on its behalf, though, is the corporation's duty to notify the secretary of state of such appointment. In other words, unless and until the West Virginia Secretary of State has been duly notified of the appointment of an alternative recipient for service of process, he/she is required to transmit the served documents to the corporation at its principal office, in accordance with the default provision for service of process upon a corporation contained in W. Va.Code § 31–1–15. *See Schweppes U.S.A. Ltd. v. Kiger,* 158 W.Va. 794, 800, 214 S.E.2d 867, 871 (1975) ("The general principle that where a particular method of serving process is prescribed by statute that method must be followed is especially exacting in reference to the service of process on a corporation defendant." (internal quotations and citations omitted)). Thus, we hold that where a corporation has appointed an agent to receive service of process but has neglected to notify the West Virginia Secretary of State of this designation, such appointment will be ineffective in changing the location for service from the corporation's principal office, dictated by W. Va.Code § 31–1–15 (1984) (Repl.Vol.1996), to that of the agent.

■ Under the facts presented in the instant appeal, we cannot find that Ito properly appointed Lawco to receive service of process on its behalf in the State of West Virginia. Ito has not incorporated in West Virginia or applied for a certificate of authority to transact business in this State. Neither has Ito notified the West Virginia Secretary of State of its appointment of an agent to accept service of process on its behalf. Because Ito has not complied with any of the statutory provisions authorizing a corporation to designate an alternate recipient of

---

21. The subsequent amendments to this provision do not affect the statutory language herein referenced. *See* W. Va.Code § 31–1–56 (1997) (Supp. 1998).

service of process other than the corporation, itself, the secretary of state was statutorily required to transmit documents it had received on Ito's behalf to its principal office in Tokyo, Japan. Thus, service on Lawco, Ito's registered agent in the State of Washington, did not constitute valid service of process as to Ito. Moreover, as noted above, service upon Ito at its Tokyo office has not been achieved because the Bowerses did not designate Ito's Tokyo office as the address to which the secretary of state should forward notice of their pending lawsuit or comply with the provisions of the Hague Service Convention governing service abroad. Therefore, we affirm the decision of the circuit court insofar as it deemed service of process on defendant Ito to be insufficient.

### B. Service of Process on Defendant SEJ

SEJ, the second nonresident defendant, is a subsidiary corporation of Ito. Like Ito, SEJ's principal office is located in Tokyo, Japan. In serving defendant SEJ, the Bowerses relied upon their theory that SEJ is Ito's alter ego. Thus, they served SEJ by serving the West Virginia Secretary of State as SEJ's attorney in fact, citing W. Va.Code §§ 31–1–15; 56–3–33, who then sent the pleading to SEJ at the Seattle, Washington, office of its alleged corporate parent, Ito.[22] The Bowerses submit that it may be presumed that SEJ received notice of the pending litigation as Ito accepted the documents addressed to SEJ and returned the return receipt to the secretary of state.

■ We begin by noting that service of process upon the agent of a corporation is proper pursuant to W. Va. R. Civ. P. 4(d)(8)(A), which permits service on a foreign corporation not qualified to do business in this State through that company's "officer, director, trustee, or agent." (Emphasis added). See also W. Va.Code § 56–3–14 (1931) (Repl.Vol.1997) ("If [a foreign] corporation has not qualified to do ... business under the laws of this State, service may be made by delivering, within the State, a copy of the

process or notice to any officer, director or agent of such corporation acting or transacting business for it in this State." (emphasis added)). Moreover, we previously have held that

[w]hen a parent-subsidiary relationship exists between corporations, either the parent or the subsidiary may be the agent of the other related corporation for the purpose of service of process. Although there is no precise test to determine how much control a parent corporation must exert over its ... subsidiary before one corporation will be deemed an agent of the other for the purpose of service of process, each case will be considered on its facts to determine if more than a parent-subsidiary relationship exists.

Syl. pt. 3, in part, Norfolk S. Ry. Co. v. Maynard, 190 W.Va. 113, 437 S.E.2d 277 (1993). Nevertheless, the mere existence of a parent-subsidiary relationship, without a more definite showing of the parent's control of the subsidiary, will not suffice to permit service of the subsidiary through the parent corporation. Id., 190 W.Va. at 119, 437 S.E.2d at 283 (citing Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925)).

■ In the case sub judice the Bowerses have not provided us with sufficient allegations to compel the conclusion that such a close relationship exists between parent corporation Ito and its subsidiary company SEJ so as to render proper service of SEJ through Ito. Assuming arguendo that such a close relationship does exist, however, we return to our original conclusion that the Bowerses failed to properly serve Ito with process at its principal office in Tokyo, Japan, or in accordance with the dictates of the Hague Service Convention. Therefore, we uphold the circuit court's decision dismissing the Bowerses' complaint as to SEJ due to invalid service of process.

### C. Service of Process on Defendant IYG

The third nonresident defendant, IYG, is a wholly owned subsidiary of Ito and SEJ, with

22. The Bowerses complain that, in the absence of discovery, they have been unable to ascertain whether SEJ has a principal place of business in the United States separate from Ito's Seattle,

Washington, office. As we explained in note 5, supra, we decline to address the discovery argument at the present time.

a registered agent in Wilmington, Delaware, *i.e.,* Corporation Trust Company [hereinafter referred to as "Corporation Trust"].[23] As with the other two nonresident defendants, IYG's principal office is in Tokyo, Japan. Seizing upon the fact that Corporation Trust was IYG's registered agent, the Bowerses served IYG by serving the Secretary of State of West Virginia as IYG's attorney in fact, *citing* W. Va.Code §§ 31–1–15; 56–3–33, who then forwarded the documents to Corporation Trust's Delaware office.[24] In turn, Corporation Trust completed the return receipt for this delivery, evidencing its receipt of the Bowerses' pleading.

▬▬▬ As noted in Section III.A., *supra,* service of process on a corporation may properly be achieved by serving a duly appointed agent of such corporation. *See* W. Va. R. Civ. P. 4(d)(8)(A); W. Va.Code §§ 31–1–56(a)(3), 31–1–53(a)(5). However, as we explained therein, the corporation must properly notify the Secretary of State of West Virginia of such appointment. Otherwise, the corporation's attempt to substitute an alternative recipient for service of process is ineffective and the secretary is statutorily mandated to serve the corporation at its principal office, as required by W. Va.Code § 31–1–15. From the facts presented for our consideration regarding the propriety of the Bowerses' service of process on IYG through its registered agent in the State of Delaware, we find no indication that IYG ever appointed Corporation Trust as its agent for receiving service of process on its behalf arising from litigation in this State. Nor can we locate any authority suggesting that IYG notified the West Virginia Secretary of State of such appointment. Thus, our conclusion must be that while IYG appointed Corporation Trust as its agent for service of process, such appointment was limited to the State of Delaware. Accordingly, service of process on IYG through Corporation Trust was insufficient to notify this defendant of pending litigation in this State. We therefore affirm

the circuit court's dismissal of the complaint as to IYG based upon insufficient service of process.

## IV.

## CONCLUSION

Despite the Bowerses' failure to properly serve defendants Ito, SEJ, and IYG, we conclude that the equities of the case and justice require us to modify the dismissal order of the circuit court to reflect that the complaint was dismissed as to these defendants without prejudice. We further remand this case to permit the Bowerses an opportunity to properly serve these nonresident defendants in compliance with the mandates of the Hague Service Convention and our decision herein recorded. Our reasons for this ruling are three-fold.

First, we previously have recognized the value of permitting defects in service of process to be remedied before hastily dismissing the complaint. *See* W. Va. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice."); Syl. pt. 1, *Marion v. Sabra Tours Int'l, Inc.,* 190 W.Va. 250, 438 S.E.2d 42 (1993) ("When through inadvertence a plaintiff fails to post the bond required by *W. Va.Code* 56–3–33 [1984], the proper sanction is to require the bond to be posted, not to dismiss the suit."). Our preference being decisions on the merits of cases, we hesitate to dismiss this matter out of hand on procedural grounds. *See John W. Lodge Distrib. Co., Inc. v. Texaco, Inc.,* 161 W.Va. 603, 605, 245 S.E.2d 157, 158–59 (1978) ("The policy of [W. Va. R. Civ. P. 8(f)] is … to decide cases upon their merits ….."). This reluctance is particularly true in a case of this magnitude where, in just three years, this case twice has been appealed to this Court, yet no decision has yet been rendered on the lawsuit's merits.

---

23. The Bowerses represent that IYG is incorporated in Delaware; IYG neither adopts nor refutes this allegation.

24. The Bowerses again complain that it was difficult to effectuate service directly upon IYG, itself,

because the lack of jurisdictional discovery precluded them from ascertaining the location of IYG's principal place of business. Nonetheless, we reiterate our reluctance to consider the discovery issue. *See supra* notes 5 and 22.

Second, by the complexities of our decision today we recognize the lack of clear authority in this State regarding service of process on an international defendant. Given this uncertainty of the law, we feel the better course is to limit the retroactive effect of today's decision and to permit the parties to utilize these newly announced principles of law.[25]

Third, and perhaps most importantly, the nonresident defendants herein have stipulated, during the oral argument of this matter, that the Bowerses may timely attempt to re-serve them with process in that the applicable statute of limitations has not yet expired. Thus, it appears that these defendants would not be unduly harmed by permitting the Bowerses to re-serve them with process through proper channels.

For the foregoing reasons, then, we affirm, in part; modify, in part; and remand this case to the Circuit Court of Jefferson County for further proceedings consistent with this opinion.

Affirmed, in part; Modified, in part; and Remanded.

Chief Justice STARCHER and Justice McGRAW dissent.

---

25. *See* Syl. pt. 5, *Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (1979) ("In determining whether to extend full retroactivity, the following factors are to be considered: First, the nature of the substantive issue overruled must be determined. If the issue involves a traditionally settled area of law, such as contracts or property as distinguished from torts, and the new rule was not clearly foreshadowed, then retroactivity is less justified. Second, where the overruled decision deals with procedural law rather than substantive, retroactivity ordinarily will be more readily accorded. Third, common law decisions, when overruled, may result in the overruling decision being given retroactive effect, since the substantive issue usually has a narrower impact and is likely to involve fewer parties. Fourth, where, on the other hand, substantial public issues are involved, arising from statutory or constitutional interpretations that represent a clear departure from prior precedent, prospective application will ordinarily be favored. Fifth, the more radically the new decision departs from previous substantive law, the greater the need for limiting retroactivity. Finally, this Court will also look to the precedent of other courts which have determined the retroactive/prospective question in the same area of the law in their overruling decisions.").